# SUPERIOR COURT.

The STATE OF DELAWARE, upon the relation of JAMES FRANK ALLEE, *et al., vs.* THOMAS McCOY, *et al.,* Inspectors of Elcetion in the several Election Districts of County of Kent, in the State of Delaware.

Kent County, Special Term, November 1896.

**Mandamus. Election. Board of Canvass.**—Elections were held in fourteen out of sixteen election districts of the county, and certificates of the result thereof, duly signed by the election judges, were delivered to the Board of Canvass, and in one of the other two districts an election was held but no certificate signed or returned, while no election was held in the other of said two districts; the inspectors with the Sheriff met and organized as a Board of Canvass at the time and place prescribed by law ; the ten Democratic members of the Board calculated the votes of only eight of the fourteen districts for which returns had been made and refused to calculate the vote of the remaining six districts, whereby the vote of the county was ascertained to be about 3948, or about 2962 less than the total vote returned, and by this means pluralities were ascertained for the Democratic candidates for the offices to be filled by the election, and certificates of the result were signed by the said ten inspectors; the six Republican inspectors with the Sheriff, as presiding officer, calculated the votes of all the said fourteen districts, for which certificates had been returned, and thereby ascertained the total vote so returned, by which there were pluralities in favor of the Republican candidates, and of this result certificates were made and signed by the said six inspectors and the Sheriff: *Held,* that a peremptory mandamus would issue, upon petition of the candidates declared by the last-mentioned certificates to have been elected, to compel the inspectors of the County to assemble at the Court House of the County at a time named by the Court, and publicly perform their duty as a Board of Canvass, by ascertaining the state of the election, by calculating the aggregate amount of all the votes given in all the election districts of the County.

**Same.**—The duty of the Board of Canvass of the County is a public duty, which if not fully performed will be enforced by mandamus, and the duty is a demand and the omission to perform it a refusal.

**Same.**—The ascertainment and certification of the results of a general election by the Board of Canvass, is a specific duty, upon the performance of which the candidates, shown to have been elected by the votes actually certified have a right to insist, and in such case mandamus is the only adequate legal remedy.

**Election. Board of Canvass. Ministerial Duty. Judicial Power.**—The duties of a Board of Canvass are purely ministerial ; it has power only to ascertain and certify the vote actually cast at the election, and has no right to determine whether they were legal or illegal votes, or whether the election was regularly held or not ; it has no right to go behind the certificates of the returns of the judges of election.

**Same.**—An attempt by a Board of Canvass to exercise judicial power with respect to the election and to do more than ascertain the result shown by the certificates returned, is a gross usurpation of the powers vested by the Constitution and laws of the State, in the Legislature, where it relates to the election of its members, and in the Courts, where it relates to the election of other officers.

**Election.**—If fraud, violence, corruption or any other illegality enter into an election so that the will of the people is thereby defeated, the defeated candidates have ample remedy under the law, in the legislature, with respect to members of that body, and in the Courts, as to other officers.

**Mandamus. Amendment. Parties.**—After a rule to show cause has been issued and returned and a motion to quash the same refused, an amendment of the petition, by the joinder of a new party respondent, may be allowed.

**Mandamus. Practice.**—The respondent in mandamus may decline to answer to the rule to show cause and insist upon the issuing of the alternative mandamus.

**Mandamus. Service of Process.**—Though the respondents in mandamus have appeared in response to the rule to show cause, where the alternative writ is insisted upon and issued, it must be served as other process unless service is waived.

**Same.**—Where the Sheriff, being a respondent in mandamus, made and returned service upon other respondents who had previously appeared by counsel at the return of the rule to show cause, the notice is sufficient and a motion to quash the return will be denied.

This was an application for a writ of mandamus to be directed to the inspectors of election of the several hundreds and election districts of Kent County, constituting the Board of Canvass of that County, to require them to reassemble and ascertain and certify the true state of the vote for officers voted for in the several hundreds and election districts of the County at the general election on the third day of November, A. D., 1896.

The petition was filed in vacation, on November 11, 1896, and a special term of the Superior Court was called, pursuant to the statute, to meet at Dover on November 19, 1896, all of which will appear in detail from the order made on the petition which is stated at large, *infra.*

The petitioners were the candidates for the offices of Senator and Representatives in the General Assembly, Sheriff, Coroner, County Treasurer, Levy Court Commissioners and Delegates to the Constitutional Convention.

The allegations of the petition (or of such paragraphs of it as were material) were in substance as follows:

1. The names of the petitioners and their respective qualifications under the Constitution and Laws of Delaware for the offices to which they claimed to have been severally elected.

2. The names of all the candidates nominated by the different political parties to be voted for at the said election for the several offices then to be filled; all of which names were duly placed on the official ballot and voted for, for said several offices, respectively, at the election.

3. The County had been duly divided into sixteen voting precincts, the names and location of which were set out in detail.

4. The General Election was held on the third day of November, A. D., 1896, at the usual and legal voting places and the respondents were by election or appointment duly and legally constituted inspectors thereof.

5. The number of votes received by the petitioners and by each of the other persons nominated for the several county offices in fourteen of the sixteen specified voting precincts of the County

were set out in detail, being summed up as, for example, for the office of State Senator the petitioner, James F. Allee, received a total of votes returned to the Board of Canvass of 3358 votes, Samuel R. Meredith a total of 3259 votes, John Heitshu a total of 168 votes, and John Heyd a total of 125 votes, showing a plurality in favor of the petitioner, James F. Allee, of 99 votes for said office of State Senator.

It was further averred that in the Eastern Election District of Duck Creek Hundred no election was held on the third day of November, A. D., 1896, and that in the Hundred of West Dover an election was held but no return of the votes cast was made to the Board of Canvass, but that if a return of the votes cast had been duly made, it would have disclosed a plurality for the petitioner, James F. Allee, of ten or under.

The petition then stated in the same manner the number of votes received by each of all of said candidates for the respective offices for which they had been severally nominated as aforesaid, in each of the said several election districts, except the Eastern Election District of Duck Creek Hundred and the West Dover Hundred Election District, as to which last mentioned districts it was averred, in the same manner, that in the former no election had been held, and that in the latter it was also averred, as above, that if a proper canvass had been made of the votes cast therein, each of the said relators would have had a plurality of at least ten votes.

6. The functions of the several officers charged with official duties in connection with the ascertainment and certification of the result of the election were described and set forth at large, viz: that of the inspectors to meet at the Court House in Dover on the Thursday next succeeding the general election; that of the Sheriff, or, in case of his death or absence, the Coroner, to attend as the presiding officer of the Board of Canvass; that of each inspector to deliver to the Sheriff or other presiding officer of the Board, the certificate of election, or in case it could not be produced then the ballot box for the Hundred might be opened and the certificate

Del.]   STATE *ex rel.* ALLEE, *et al.* vs. McCOY, *et al.*   469

Statement.—Petition.

therein contained might be taken and used and again deposited in the box; that of the Board of Canvass publicly to ascertain the state of the election throughout the County and to make certificates thereof as required by law with respect to each office for which the election was held.

9. It was further averred that the inspectors of the several Hundreds and Elections Districts of the County, did meet at the time and place so provided by law, and that the Sheriff did attend and remain continuously until the adjournment, he and the inspectors constituting the Board of Canvass of which the Sheriff was the legal presiding officer. At the said time and place each of the inspectors of the Hundreds and Election Districts where elections were held, with the exception of the inspector for West Dover Hundred, did deliver to the Sheriff, as such presiding officer, the certificate of election for his Hundred or Election District.

11. And the Board of Canvass did not open the ballot box for West Dover Hundred and take out and use the certificate therein contained, as under the law it was their duty to do.

12. It was further averred that the Board of Canvass did not publicly ascertain the state of the election throughout the County by calculating the aggregate amount of all the votes for each office that had been given in all the Hundreds and Election Districts of the County for every person voted for for such office, but, on the contrary, though assembled for that purpose, refused so to ascertain the state of the election, although requested to do so.

13. It was expressly averred that the Board of Canvass refused to calculate the number of votes for every person voted for for each office in Election Districts Nos. 1 and 2 of East Dover Hundred, No. 2 of South Murderkill Hundred, and the Western Election District of Milford Hundred.

14. And that the Board of Canvass did not, before any adjournment or separation, make any legal and proper certificates of election as prescribed by law.

15, 16. It was further averred that certain of the defendants, to wit, Thomas McCoy, the inspector for Eastern Election District

of Duck Creek Hundred, Abel S. Farries, the inspector for Western Election District of Duck Creek Hundred, William H. Greenwell, the inspector for Kenton Hundred, John L. Scotten, the inspector for Little Creek Hundred, Thomas H. Baxter, the inspector for West Dover Hundred, William H. Walker, the inspector for Election District No. 2 of East Dover Hundred, Alexander J. Draper, the inspector for West Election District of North Murderkill Hundred, Samuel C. Hughes, the inspector for Election District No. 1 of South Murderkill Hundred, John W. Sheldrake, the inspector for Election District No. 1 of Mispillion Hundred, Frank Tumlin, the inspector for Election District No. 2 of Mispillion Hundred, did at the time and place prescribed by law pretend to ascertain the state of the election throughout the County, but calculated the number of the votes for each office that had been given only in the following Hundreds and Election Districts, to wit: The Western Election District of Duck Creek Hundred Little Creek Hundred, Kenton Hundred, Third Election District of East Dover Hundred, West Election District of North Murderkill Hundred, Election District No. 1 of South Murderkill Hundred, Election District No. 1 of Mispillion Hundred, and Election District No. 2 of Mispillion Hundred, and did refuse to calculate the number of the votes for such officers in all the remaining hundreds and election districts for said County, and did, as a result of said ascertainment, knowingly, illegally and wrongfully make, sign, and deliver, false, incorrect, misleading, and illegal certificates of said election to certain candidates for the offices voted for in said County who had not received a majority or plurality of the votes cast in said County for each of said offices respectively.

17. This action it was charged was an attempt to deprive each of the petitioners of the office to which he was justly and legally entitled and worked an injury and detriment to each of the petitioners.

18. And in each and every of the Hundreds and Election Districts of which the last mentioned members of the Board of

Canvass refused to calculate the votes, a large plurality of the votes cast were for each of the petitioners.

19.  It was further averred that certain of said inspectors constituting a portion of said Board of Canvass, to wit, Erasmus D. Burton, inspector for Election District No. 1 of East Dover Hundred, John S. Rowan, Inspector for Third Election District of East Dover Hundred, Levi G. Sterner, Inspector for Eastern Election District of North Murderkill Hundred, Benjamin T. Conwell, Inspector for Election District No. 2 of South Murderkill Hundred, Clarence Mason, Inspector for Eastern Election District of Milford Hundred, and Charles Macklin, Inspector for Western Election District of Milford Hundred, did, on the day and year aforesaid, meet with the other of said Inspectors at the County Court House of said County, and constituting a portion of said Board of Canvass, did publicly, in the presence of such electors of the County as thought proper to be present, ascertain the state of the election throughout the County by calculating the aggregate amount of all the votes for each office that had been given in all the hundreds and election districts of said County where an election had been held except West Dover Hundred, the certificate of which was withheld as aforesaid, and did, after the state of the election had been ascertained by calculating the votes as aforesaid, together with the Sheriff, who was the presiding officer of said Board of Canvass, and before any adjournment or separating of said Board, make under their hands the certificates of election prescribed by the statutes of the State of Delaware in such case.

20.  And the calculation of the aggregate amount of all the votes for each office that had been given in all of the Hundreds of the County for every person voted for for such office made by the inspectors last above enumerated, did show that each of your petitioners had received a substantial plurality of all the votes cast for said offices at said election in the County aforesaid.

21.  After the calculation last mentioned, and the preparation of the certificates based thereon, the Sheriff, as presiding officer, re-

quested each and every inspector constituting the Board to sign the same, but all refused except those last specifically named.

22. And this refusal and failure of the Board of Canvass to ascertain the state of the election in accordance with the statute, and to make proper and legal certificates of the election of each of the petitioners, worked great detriment, wrong and injustice to each of them by depriving him of the office for which he received a legal plurality in the county and to which he was legally elected and entitled.

The prayer of the petition was as follows:

Wherefore, there being no other adequate remedy in the premises, your petitioners pray this Honorable Court to issue a peremptory writ of mandamus of the State of Delaware directed to the said defendants, Thomas McCoy, Abel S. Farries, William H. Greenwell, John L. Scotten, Thomas H. Baxter, Erasmus D. Burton, William H. Walker, John S. Rowan, Levi G. Sterner, Alexander J. Draper, Benjamin T. Conwell, Samuel C. Hughes, John W. Sheldrake, Frank Tumlin, Clarence Mason and Charles G. Macklin, inspectors of election in the several Hundreds and Election Districts in and for Kent County, commanding them and each of them, as follows, to wit:

To assemble at the Court House of their County in the town of Dover on a day and at an hour to be named by this Honorable Court, and then and there publicly, in the presence of such electors of the County as shall think proper to be present, ascertain the state of the election throughout the County by calculating the aggregate amount of all the votes for each office that shall have been given in all of the Hundreds and Election Districts of the County for every person voted for for such offices, and after the state of the election shall have been so ascertained, by calculating the votes as aforesaid, before any adjournment or separating of said Board of Canvass, to make, together with the Sheriff, or other presiding officer of the Board of Canvass, under their hands the proper and legal certificates of election in the manner prescribed by the statutes of the State of Delaware for certifying the election of the sev-

eral officers voted for at said general election on the third day of November, A. D., 1896, and in this petition enumerated and described, and that said certificates shall thereupon be delivered and disposed of as required under the laws of the State of Delaware.

And your petitioners further pray that such other and further relief shall be granted, as the nature of the case may require, and as shall to this Court seem meet and proper.

And your petitioners will ever pray &c.

The petition was under oath or affirmation, of all the petitioners, that the facts set forth in the above and foregoing petition, so far as concerns each of said petitioners' acts and deeds, were true of his own knowledge, and that what relates to the act and deed of any other person he believed to be true.

The petition, having been filed with Prothonotary as before stated, was immediately transmitted by the Prothonotary to the Chief Justice under the provisions of Section 3, Chapter 775, Volume 19 Laws of Delaware. Whereupon a majority of the members of the Court deeming it expedient to call a special session thereof, to convene at the County Court House of said Kent County, in the town of Dover, on Thursday the 19th day of November A. D. 1896, a special session of said Court was called to meet as aforesaid, and the Chief Justice of said Court awarded the following rule to show cause.

WHEREAS, the petition of the complainants in the above stated cause, against the defendants in the said cause, for a peremptory writ of mandamus of the State of Delaware, to be directed to the said defendants, has been filed in the office of the Prothonotary of the Superior Court of the State of Delaware, in and for Kent County, and such petition has been immediately transmitted by the said Prothonotary to the Honorable Charles B. Lore, the Chief Justice of the State of Delaware;

AND WHEREAS, it appears to the said Honorable Charles B.

Lore, Chief Justice as aforesaid, that the matters contained in said petition and affidavits accompanying the same ought to be heard and determined before the time of the next regular session of said Court;

AND WHEREAS, by virtue of the statues of the State of Delaware in that behalf, the said Honorable Charles B. Lore, Chief Justice as aforesaid, the Honorable Ignatius C. Grubb and the Honorable Charles M. Cullen, Associate Judges of the Superior Court of the State of Delaware in and for the County of Kent, have deemed it expedient to call a special session of said Court to be convened at the County Court House for said County, in the town of Dover, on Thursday, the nineteenth day of November, 1896, at half past ten o'clock in the forenoon.

NOW THEREFORE, the said petition for said mandamus having been read and maturely considered by the said Honorable Charles B. Lore, Chief Justice of the State of Delaware, the said Chief Justice upon the motion of the counsel for said petitioners, hereby awards a rule to show cause why, upon the petition of the said complainants as aforesaid, a mandamus shall not be issued to Thomas McCoy, Abel S. Farries, William H. Greenwell, John L. Scotten, Thomas H. Baxter, Erasmus D. Burton, William H. Walker, John S. Rowan, Levi G. Sterner Alexander J. Draper, Benjamin T. Conwell, Samuel C. Hughes, John W. Sheldrake, Frank Tumlin, Clarence Mason and Charles G. Macklin, defendants in the above stated cause, Inspectors of Election in the several Hundreds and Election Districts in and for Kent County, commanding them and each of them to assemble at the Court House of the County of Kent, in the town of Dover, on a day and at an hour to be named by this Honorable Court, and then and there, publicly, in the presence of such electors of the County as shall think proper to be present, ascertain the state of the election mentioned in said petition throughout the County by calculating the aggregate amount of all the votes for each office that shall have been given at said election in all of the Hundreds and Election Districts of the County for every person voted for for such offices, and after the

state of the said election shall have been so ascertained by calculating the votes as aforesaid, before any adjournment or separating of said Board of Canvass, to make, together with the Sheriff, or other Presiding Officer of the Board of Canvass, under their hands, the proper and legal certificates of election in the manner prescribed by the statutes of the State of Delaware for certifying the election of the several officers voted for at said general election on the third day of November, A. D. 1896, and in said petition enumerated and described.

And further, to show cause why the relief prayed for in said petition for said mandamus and such other and further relief as the nature of the case may require, and as shall, to the said Court, seem meet and proper, should not be granted.

And it is further ordered that this rule shall be returnable to and be heard at the said special session of said Superior Court of the State of Delaware, in and for the County of Kent, to be held at the County Court House for said County, in the town of Dover, on Thursday, the nineteenth day of November, 1896, at half past ten o'clock in the forenoon.

CHARLES B. LORE,<br>*Chief Justice.*

The call issued for said special session was as follows:

WHEREAS, for certain causes which appear to the Judges of the Superior Court of the State of Delaware, in and for Kent County, to be sufficient, a majority of the members of the said Court, to wit, Charles B. Lore, the Chief Justice of said Court, the Honorable Charles M. Cullen, and the Honorable Ignatius C. Grubb, Associate Justices for said Court, deem it expedient to call a special session of the said Superior Court in and for Kent County.

Now, THEREFORE, I, the said Charles B. Lore, Chief Justice of the State of Delaware, do hereby call a special session of said Superior Court, in said County of Kent, to convene at the County Court House in the Town of Dover, in said County of Kent, on

Thursday the nineteenth day of November, 1896, at half past ten o'clock in the forenoon, and hereby designate the business of which the said Court shall have cognizance at such special session, to be the hearing and determining of a certain petition of the State of Delaware, upon the relation of James Frank Allee and others, against Thomas McCoy and others, Inspectors of election in the several election districts in the County of Kent, in the State of Delaware, for a peremptory writ of mandamus of the State of Delaware, to be directed to the said Thomas McCoy and others, defendants in said petition. And I, the said Charles B. Lore, Chief Justice as aforesaid, further prescribe and direct that a true copy of this call for a special session of said Superior Court shall be straightway posted upon the outside door of the County Court House, for said County of Kent, and that the said posting of said call shall be legal and sufficient notice of the calling of said special session of said Superior Court. And it is further ordered and directed that this call for a special session of said Superior Court shall be, by the Prothonotary of the said County of Kent, entered upon the records of the said Court, and a copy thereof by him immediately transmitted to each of the Judges of said Court.

CHARLES B. LORE,<br>
<em>Chief Justice.</em>

The Court having convened in special session at Dover on November 19, 1896, the Sheriff's return was read as follows:

"Served personally by copy being placed in the hands of the following named persons, this thirteenth day of November, A. D. 1896:—Thomas McCoy, Abel S. Farries, William H. Greenwell, John L. Scotten, Thomas H. Baxter, Erasmus D. Burton, William H. Walker, John S. Rowan, Levi G. Sterner, Alexander J. Draper, Benjamin T. Conwell, Samuel C. Hughes, John W. Sheldrake, Frank Tumlin, Clarence Mason, Charles C. Macklin."

"And I, Samuel L. Shaw, Sheriff of said County, do further return upon the within rule to show cause, that I have personally and officially taken notice thereof, and hereby waive service of said

rule, and the joinder of myself as co-respondent in the petition for mandamus in said cause, and submit myself to the orders and writs of the Court, as fully, to the same extent, and in the same manner as if I had been made a party respondent therein.

So says Samuel L. Shaw, Sheriff."

*George M. Jones* entered an appearance for Samuel L. Shaw, Sheriff, and for Erasmus D. Burton, Inspector of Election District No. 1, East Dover Hundred; John S. Rowan, Inspector for Third Election District of East Dover Hundred; Levi G. Sterner, Inspector for Eastern Election District of North Murderkill Hundred; Benjamin T. Conwell, Inspector for Election District No. 2 of South Murderkill Hundred; Clarence Mason, Inspector Eastern Election District of Milford Hundred, and Charles Macklin, Inspector for Western Election District of Milford Hundred, and he presented and read the answer of the six last-named defendants, admitting as substantially true all the averments in said petition for mandamus contained, and further submitting the said defendants to the orders and any writs of said Court which it may deem it advisable to make or issue in the above stated cause.

*James L. Wolcott,* for the remaining ten respondents. There being no statute in this State, the procedure in mandamus is to be regulated by Common Law rule and practice.

As I understand, the initial step has already been taken for the purpose of procuring a peremptory writ of mandamus in this matter. The next step, as I understand it, is to hear a rule to show cause as to whether an alternative writ of mandamus will issue, and to that the respondents will make their return. And upon argument after that return is made, the peremptory writ will issue, or not, as the Court may deem proper in the matter.

I know of no principle or rule of law in respect to making answer to the petition upon which a rule is grounded, or by which a proceeding is initiated, and an answer is something that is entirely foreign to the law, and the course, as I have already intimated, is

that established by Common Law, by which we must be governed, inasmuch as there is no statute in this State regulating the matter.

It is true that the statute by which this Court is convened in special session provides for the application for a writ of mandamus and issuance of a rule to show cause why mandamus shall not issue, but that is no more nor less than an affirmation of the Common Law principle. It does not change, vary or modify in any respect the Common Law principle, being a mere affirmation of it. As I understand it, and I think it is laid down in all the authorities upon that subject, the first step is to make the application, which may be by petition, or affidavit, or both, and then a rule issues to show cause why a writ of mandamus shall not issue; and upon the return of that rule, and the hearing of the application for a mandamus, the alternative writ is framed and issues; that is to say, commanding the respondents to do the thing they are required to do or to show cause why they did not do it.

No injury can result from such careful and deliberate consideration of this case as its importance demands. The Constitutional Convention and the General Assembly have full power to deal with the questions involved so far as they effect membership of either body. We are not seeking mere delay, with which to have the case postponed, but 'we do ask for sufficient time to enable us to place these respondents before the Court in the position to which they are entitled.

Under the circumstances of this case, it was impossible for these respondents to obtain the information required for the preparation of their answer or return. The returns of the election officers are legally in possession of the Sheriff who may not deliver them to any one except upon an order of the Court, to obtain which this is the first opportunity. We therefore apply for an order upon the Sheriff to permit the examination of these returns and for a postponement of the case to a day fixed for filing our answer or return.

LORE, C. J.   Representing these defendants, do you insist upon the issue of the alternative writ?

*Mr. Wolcott.*   We do not insist now.

LORE, C. J.   Your are bound either to insist upon the alternative writ, or answer now.   The practice is well settled in this State. Which will you do?

*H. H. Ward,* for the petitioners.   This is a case of emergency and should be speedily heard and decided.   The purpose of the act of 1893, Rev. Code 696, was to secure the speedy decision both in this Court and in the Court of Errors and Appeals of just such cases.   A fair consideration of the statute would seem to indicate that it contemplated a rule to show cause and that the mandamus to be issued at the return of the rule should be peremptory. Nothing is said of an alternative writ, and the practice in this State is to dispense with the alternative writ and that a peremptory writ shall issue upon a hearing of the rule to show cause.

With respect to the contention that the returns are in the hands of the Sheriff and no access may be had to them, it is not alleged that any demand had been made upon and refused by the Sheriff in connection with the returns.

Until this is shown it would not appear that an order is necessary to secure inspection of the returns.

*Wolcott,* for the respondents, replied.   The idea has never been entertained by any one in this State that the ballot boxes after being deposited in the custody of the Sheriff should be examined or looked into without an order directed by a superior tribunal or court.   Either house of the General Assembly can demand it or this Court may do so, and doubtless the Constitutional Convention could demand an inspection for their own information respecting the election of members of that body.

It is contended that the Board of Canvass acted illegally, and

it is but just to state on the other side that it is claimed as a matter of general information that the result of the election in this County was obtained by glaring fraud and corruption.

LORE, C. J.　The Court are a unit upon the practice as we conceive it to be now settled, and certainly in this case, in respect to mandamus.

The practice indeed has been passed upon in New Castle County and in Sussex ; and what ever fluctuations may have heretofore existed in respect to the practice in these writs, we consider as now ended.

Upon the return of a rule granted on petition to show cause why a writ of mandamus shall not issue, objection may be made to the sufficiency of the record,—that on the face of the record, from the plaintiff's own showing, he is not entitled to the issuance of a rule.　No such objection has been made here, and it is not before us.　On return of the rule, the respondents then have the right to come in if they see proper and to answer the rule and thus make up an issue upon which the Court can go into the hearing ; or to decline to show cause and instead to insist on the alternative writ of mandamus.　That has been ruled in three or four cases in the last three years.　The alternative writ of mandamus is made returnable, in the discretion of the Court, to meet the exigencies of the public good and the rights of parties interested.　When the alternative writ is returned, then the respondents must file their answer.

That makes up, as you will see, logically and properly an issue, and the petition and answer to the petition give us something to hear and try ; and when the issue is thus made up upon the return and answer to the alternative writ, we hear the case.

So that, under the proceedings as they now stand, we deem the petitioners entitled to the alternative writ, and the only question is, when shall that writ be returnable.　Upon that question we will hear you if you have anything to say.

After some discussion as to the time for further hearing of the

case the Court adjourned until 2.30 P. M., having announced that they would in the meanwhile determine the question of time.

On the reassembling of the Court, *J. B. Penington*, for the respondents who did not answer, called the attention of the Court to the fact that the Sheriff after making his return had withdrawn it from the office of the Prothonotary and added the paragraph in which he undertook without authority or direction of the Court to make himself a party.

This second paragraph of the return *Mr. Penington* moved to strike out, contending that the alternative writ must follow the petition.

*Ward*, for the petitioners. This is not an application by the Sheriff. His return is conclusive.

*Wolcott*, for the respondents. That is true, but the application is made on behalf of other respondents in the case. The Sheriff seeks without leave of the Court by his return to correct a mistake which was made originally. This cannot be done ; the only course open was an application on behalf of the Sheriff to permit the petitioners to amend their writ and petition and to make the Sheriff a party.

GRUBB, J. It will all come up again on the alternative writ, whether he can be properly included in the alternative writ as a respondent when he was not included in the rule to show cause or in the prayer in the petition. Therefore if he could not be put in the alternative writ, that part of his return would have to be disregarded, whether it is stricken out of his return or not. That question, of course, will have to come up on the alternative writ, and it is a question which we should not now consider.

*Mr. Ward.* The question would come up, I suppose, in a motion to quash the writ?

*Mr. Wolcott.* We do not waive the right to make the objection.

LORE, C. J. It is the Sheriff's return, and as such we are bound to treat it. What the effect of it may be will be a matter hereafter.

*Mr. Ward.* Then we will leave it.

LORE, C. J. That is proper, we think. It is the Sheriff's return; the effect of it you may discuss hereafter.

*Mr. Wolcott.* That is all right; but we have not waived it.

*W. H. Hayes,* for the petitioners. It has been suggested, and we have considered it, that in the fixing of the time of the return of this alternative writ there is another thing to be considered. That is the time at which the command shall be to the Board of Canvass, by the alternative writ, to meet. Then the day of the return or answer can be fixed with reference to that. There are two days to be fixed: the time at which the Board shall meet and the time at which the alternative writ shall be returned.

LORE, C. J. The alternative writ commands them to meet and do a certain thing, or else to appear here on another day and show cause why they have not done it. The Court have considered this matter.

It is a grave question; one that requires very careful and considerate treatment by both sides, and the most thorough opportunity for the respondents to answer. But it is also a writ of remedy; and if the statements in the petition be true, this is a public exigency and demands prompt action.

We therefore make the order that this alternative writ be returnable on Tuesday morning next, November 24, at 10.30 o'clock; and that in the alternative writ the Board of Canvass be

directed to perform their duty on Monday, the twenty-third day of November, at 12 o'clock M.

This Board is to meet on Monday and discharge its duty, or to appear, in obedience to the alternative writ, on Tuesday next, and show cause why they have not done so.

*H. H. Ward,* for the petitioners, in the presence of the other counsel, asked advice of the Court as to service,—the method of service,—for the instruction of the Sheriff.

GRUBB, J.   My recollection of the law of mandamus is that the alternative writ must be served.   It is a command.   If it is not served they of course could give that as a reason for not obeying it.

*Mr. Ward.*   Yes, but they are in Court now.

CULLEN, J.   It is an additional process.

LORE, C. J.   They are entitled to service, if they insist upon it.

*Mr. Ward.*   Would the proper method of serving the writ be by leaving a certified copy with each respondent?

CULLEN, J.   The rule as to service of process is well settled. In this case you may serve a copy, or state the subject matter; it is sufficient.

GRUBB, J.   High on mandamus lays it down, and in some States it is held, that you must serve the original on one of them, the first, for instance, and serve a copy on the others.   In other States it is different.   We have never ruled on that matter, so far as I have ever discovered.

CULLEN, J.   When you serve by copy, you must make a copy.

In other words, the service is by stating the substance of the writ in notifying the party. The common law practice prevails in this case.

*Mr. Jones.* · Will you allow me to accept service for the gentlemen for whom I appeared this morning?

CULLEN, J.   Certainly.

LORE, C. J.   You had better file of record a statement that you appear for those parties. Put it in writing that you waive the issue and service of the writs so far as each of them is concerned and appear for these respective defendants.

The special term was then adjourned until November 24, 1896, at 10.30 A. M.

On November 24, 1896, the Court having reassembled in Special Session, *Jones,* for the respondents who had answered the rule to show cause, presented the return of the Sheriff as follows:
"Served personally by copies hereof being left with the following:—Thomas H. Baxter, John W. Sheldrake, John L. Scotten, William H. Walker, William H. Greenwell, Samuel C. Hughes, and Frank Tumlin, on the nineteenth day of November, A. D. 1896, and with Alexander J. Draper, Abel S. Faries and Thomas McCoy on the twentieth day of November, A. D. 1896, the service being accepted in writing by George M. Jones, attorney, for Erasmus D. Burton, John F. Rowen, Levi G. Sterner, Benjamin T. Conwell, Clarence Mason and Charles G. Macklin, and Samuel L. Shaw, Sheriff, on the nineteenth day of November, A. D. 1896. So says

SAMUEL L. SHAW,
*Sheriff.*

*Penington* and *Wolcott,* for the other respondents, moved to

quash the return upon the ground that the Sheriff was an interested party and could not serve the writ.

*Ward,* for the petitioners, contended that there was no legal exception to the Sheriff. It is not like a writ of summons, but it is one which only requires notice to the respondents to do a certain thing or show cause why it was not done. If in any manner they receive notice it is sufficient and they must obey the order.

But if, for the sake of argument, the service were irregular, the objection cannot now be interposed, as, on the day when the writ was ordered, service was waived and appearance entered for the Sheriff and five other respondents, and there could be no reason why the Sheriff could not serve it upon the others. It further appears that others of the respondents have appeared by counsel. There is no denial that every one of them had full notice of the writ.

LORE, C. J. We do not see just now, at the present stage of the case, any legal exception to this return. You must bear in mind, gentlemen, that you are all in Court. It appears from the return of this writ for every one of these parties. This is a proceeding taken after you have come into Court.

It is not urged that you have not had notice, being in Court. We think the notice, so far as now appears, sufficient, and the motion to quash the return is denied.

*Penington,* for some of the respondents, then moved to quash the alternative writ of mandamus for the following reasons:

1. The writ of mandamus was not directed to the proper persons in that it was directed to the persons alleged to be inspectors of the several Hundreds and election districts of Kent County and the Sheriff of Kent County; whereas it should have been to the Sheriff and other alleged members of the alleged Board of Canvass, commanding it, as such Board, to reconvene to perform the mandates of said writ.

2. The alternative writ of mandamus does not follow the petition and the order of the Court in that a new party is made, to wit.: Samuel L. Shaw, Sheriff of Kent County, is joined as a co-respondent without any authority therefor.

3. It does not appear from the petition or writ of mandamus that the certificates of election which were produced to the Sheriff and inspectors of the several Hundreds and election districts throughout the County, sitting as an alleged Board of Canvass on Thursday, the fifth day of November, A. D. 1896, as stated in said petition and writ of mandamus, were signed and properly authenticated by the inspectors and judges of the respective Hundreds or election districts, or by a majority thereof; nor that the said certificates had the votes received by each and every candidate voted for set out in words at length.

4. The averment that the certificate of election for each hundred or election district was presented to the sheriff at the session of the alleged Board of Canvass did not set forth with sufficient particularity the papers purporting to be certificates of election in the several hundreds and election districts to show that they were such certificates from which the alleged Board of Canvass was bound to ascertain and to calculate the state of the election throughout the county.

5. It is alleged that the respondents had been legally elected or appointed inspectors of election for Kent County, whereas they could not have been so elected, because there is no law of this State authorizing the election of inspectors, and if they were appointed, it should have been set forth clearly and distinctly when and by whom they were respectively appointed.

6. George H. Murray is made a party relator, when it does not appear that he signed the petition for a rule or writ of mandamus, or has ever been made a party relator in any proper manner. Neither has he become a party by any proceedings before this Court.

7. The petition and writ of mandamus set forth and show that there was an election held in West Dover Hundred on Novem-

ber 3d, A. D. 1896, but it does not show that the relators have resorted to the proper remedy to have the result of said election presented to the said alleged Board of Canvass, so that it could calculate and ascertain the state of the election in that Hundred in in said County.

8.    It appears by the petition and said writ of mandamus that the papers purporting to be certificates of election were delivered to the Sheriff of Kent County, and that being so delivered, are no longer subject to the control of your respondents, and that said certificates being thus out of the possession of your respondents, and no order being made in the writ of mandamus command-ing the Sheriff to deliver them to your respondents, they could have no certificate from which to ascertain the state of the election throughout the county and issue certificates of election as required by law and the mandate of the said writ in that behalf.

Upon the point that the petition was defective, referring par-ticularly to the third and fourth grounds on which the motion was based, he contended that "it is a fundamental principle in the law of mandamus, that the act sought to be enforced must not only be lawful and proper in itself, but it also must be one that the defend-ant may properly do." *People. ex rel. Besse vs. The Village of Crotty, 93 Ill. 180.*

*Ward,* for the relators, contended that the Sheriff was not an essential party to the proceeding, though he might not be an im-proper party. Nevertheless, it was deemed proper, at the time of the return of the rule to show cause, to take certain steps in order to make him a *pro forma* party. The Sheriff is not an essential part of the Board. The law provides that he shall attend but it is within the contemplation of the statute that he may fail to do so and in his absence the Coroner is the presiding officer and he and the inspectors constitute the Board. But neither the Sheriff nor the Coroner nor the Prothonotary, who is made the presiding officer n the absence of the others, need attend if they do not choose to do so and in such case the Board of Inspectors may from their own

number choose a presiding officer.  Hence, in contemplation of law the only absolutely essential parties to this proceeding are the inspectors of the county, the very members of the Board of Canvass who were originally made parties.  And with this view every part of the statute is consistent.  As well might it be insisted that the Coroner and the Prothonotary should be parties as that the Sheriff is necessarily one.

Again this writ runs against these parties in their official capacity and at the election in question a Sheriff was chosen who must be commissioned by the Governor and until such commission is issued there was uncertainty whether the old Sheriff would be out of office and if so who would be commissioned as the new one.  Such was the condition of affairs at the time the petition was granted, and it would be a serious question whether the new Sheriff, *ex officio*, would not be the presiding officer of the Board.  *State vs. County Judge of Marshall County*, 7 Ia. 199.

Though we all concurred in this view that the Sheriff was not a necessary party, as he had actually presided in the Board of Canvass, it was deemed proper that he should be joined here, in order to prevent any possible contention, such as was made in the case of *Knight et al. vs. Ferris*, 6 Houst. 322, that the Sheriff might not be willing and could not be compelled to perform his duty unless made a party.  This was done, it is conceived, in such manner as to bring us within the reasoning of the Court of Errors and Appeals in the case last cited.

Who is to object when a person considered by the Court to be a proper party comes into Court and makes himself such.  It does not lie in the mouths of the respondents to object unless they can show injury and this could only be by establishing the fact that they have done their duty.  Otherwise we are entitled to the remedy and they have not been injured by the Sheriff's return.

In answer to the criticisms made upon the frame of the allegations in the petition it is sufficient in averring the performance of a duty to follow the words of the statutes directing that duty and that is precisely what is done here.  There is no denial that the

certificates were in due form but only that there is no sufficient averment that they were. But in the absence of any averment that they did not do their duty there is a presumption of law, upon which the relators had a right to rest, that these officers did do their duty. Another principle to be remembered is that official acts cannot be questioned in a collateral proceeding where persons who have joined in doing those acts are not parties. Here we have certificates to be signed by three persons of whom one only, the inspector was a party.

*Wolcott,* in support of the motion, replied.

LORE, C. J., delivered the opinion of the Court.

The majority of the Court think that at this stage of the case, this motion to quash ought not to prevail. By that we do not mean to preclude you from bringing up any question when you come to the merits of the case that may be proper, so as to have the whole case fully and fairly before us.

GRUBB, J., dissenting. I feel constrained to dissent from the decision of the majority of this Court, and to state my reason for so doing.

The counsel for the majority of the respondents have moved the Court to quash this Alternative Writ of Mandamus and have presented several grounds in support of their motion. Owing to the supposed urgency of this case, I have not had sufficient time duly to investigate and consider all the questions of law presented at the argument yesterday, but as, in my judgment, the determination of one of these questions will dispose of the pending motion, I will restrict myself to that and briefly express my views respecting it.

I am thoroughly convinced that this alternative writ should be quashed because Samuel L. Shaw, the Sheriff of Kent County, was made a party to the alternative writ when he was not, and has

not yet been named either in the petition of the relators or in the rule to show cause issued thereon.

He has pretended to make himself a party simply by his own official return endorsed on the rule which was issued against all the other defendants to be served by him as Sheriff, but not against himself. He has thus pretended to make himself a party respondent by his own unauthorized act, when neither he himself has, nor have the respondents or the relators, asked or obtained leave for this purpose, or asked or obtained leave of the Court to amend the petition and rule for said purpose.

· If this is allowable in this case, then in any ordinary form of action any stranger could as well intrude himself and become a party plaintiff or defendant to a private suit against the desire of the actual parties and without leave of the Court. For this mandamus· proceeding is brought by the petitioners to assert a private right to· offices of greater or less pecuniary value, and in their individual and not their public character. It is in this respect, therefore,. similar to any other private action. And hence it is utterly absurd to hold that the said Sheriff can by his own mere volition and unauthorized return, thus make himself a party to this alternative writ. In adopting this course the Sheriff and his counsel have relied upon an absolute misconception of Chancellor Saulsbury's opinion in *Knight* and *Kennedy vs. Ferris,* decided in our Court of Errors and Appeals and reported in 6 Houston 322–24, wherein he reviews the case of *State vs. Jones et al.,* 1 Iredell 129.

In the case last cited the Court there held that the writ of mandamus should be directed to all the persons whose duty it was to perform the acts required, though some of them might be applicants for the writ. In that case there were seven commissioners whose duty it was to do a specific act. Three of the commissioners filed a petition for a mandamus to compel the other four, in concurrence with them, to perform the specific duty, and an alternative mandamus was issued directed to the four only, which was returned with an admission of service by the three petitioners and an expression of readiness to perform their duty; whereupon a peremp-

Del.]    STATE, *ex rel.* ALLEE, *et al.* vs. McCOY, *et al.*    491

Dissenting Opinions.

tory mandamus was ordered. It was held that the order for the peremptory mandamus was against all, and that the proceedings were sufficient although the alternative writ was directed to the other four only, and did not include and was not directed or addressed to their other three colleagues.

But in this Iredell case the Court expressly call attention to the fact that the petition, in conformity with which the alternative writ issued, contained the names of all the seven commissioners and also prayed that the writ of mandamus be directed to all of them. Chancellor Saulsbury, in *Knight* and *Kennedy vs. Ferris*, 6 Houston 323, also particularly notes this fact and relies upon this distinction in the differing case then before him.

This case now before us here, also differs from the Iredell case in that the name of Sheriff Shaw was not included as a co-respondent in either the petition or prayer of the relators, or in the rule to show cause issued in conformity therewith. Nor can it be so included in the alternative writ which must also be in conformity therewith. As this case stands, therefore, he is not rightfully or lawfully a party to these proceedings, and there is nothing in either the Iredell case or in *Knight* and *Kennedy vs. Ferris*, to warrant the view of the Sheriff, or of the counsel for him or for the relators, that he has legally been made a proper party respondent in either the rule or the pending alternative writ. Such a contention or claim is absolutely untenable. Hence this alternative writ now stands, in legal contemplation, as if his name did not at all appear anywhere within it.

According to the rule declared and established in *Knight* and *Kennedy vs. Ferris*, in our Court of Errors and Appeals, which is binding upon this Court, the mandamus must include and be directed to all whose duty it is to do the specific act, the performance of which is commanded by it, or it will be fatally defective. Sections 24, 28 and 29 of Chapter 18, Revised Code, pp. 168–9, expressly declare that both all the Inspectors and the Sheriff of this County shall constitute the Board of Canvass and shall ascer-

tain the state of the election and make and certify the result thereof in the manner prescribed by law. Therefore, as this alternative writ does not, in legal contemplation, contain the name of Sheriff Shaw, in addition to the names of all the several Inspectors therein specified, it is insufficient and fatally defective, and should be quashed.

Because this view of the law is adverse to the relators is no reason why he who is called upon to judicially declare the law as it has been settled authoritatively by the Court of last resort in this State, should not impartially, deliberately, and unfalteringly do so. Unless long recognized and authoritatively established rules of law are firmly adhered to, neither the Courts, nor the Bar or suitors will have any fixed principles or practice for their guidance, and all will become engulfed in a whirlpool of uncertainty and hopeless confusion. Judicial decisions make precedents for future guidance. Settled rules of law which, according to the experience of many generations, have done justice in the great majority of instances, although not in all, owing to the imperfection of human instrumentalities, should not be disregarded in the desire to redress an apparent wrong in some exceptional cause, for the precedent thereby created may in future work great injustice in countless cases. It is not for this Court, but the Legislature, where it may, to alter the law as settled by the deliberate adjudication of the Court of Errors and Appeals in this State.

LORE, C. J., requested the counsel for the respondents to make their returns to the alternative mandamus.

*Jones*, on behalf of six of the inspectors who were respondents filed their answer, dated this day, of which the substance was as follows:

These six respondents were as named below, each being the inspector of the hundred or district mentioned: Erasmus D. Burton, of Election District No. 1, East Dover Hundred; John S. Rowan, for Third Election District of East Dover Hundred; Levi

Del.]    STATE, *ex rel.* ALLEE, *et al.* vs. McCOY, *et al.*    493

Returns of Respondents.

G. Sterner, for the Eastern Election District of North Murderkill Hundred; Benjamin T. Conwell, for Election District No 2, South Murderkill Hundred; Clarence Mason, for Eastern Election District of Milford Hundred, and Charles Macklin, for the Western Election District of Milford Hundred. They stated that in obedience to the command of said writ, they met with William H. Walker, Inspector for Election District No. 2 of East Dover Hundred, and Samuel L. Shaw, Sheriff, at the time and place mentioned in the writ, and they and each of them were then and there ready and willing to ascertain the state of the election throughout Kent County, by calculating the aggregate amount of all the votes for each office that had been given in the hundreds and election districts of Kent County for every person voted for for such offices, and to make, together with the Sheriff of said county or other presiding officer of the Board of Canvass and the other inspectors of election aforesaid, under their hands, the proper and legal certificates of election in the manner prescribed by statute, but that a majority of the Inspectors of Election in said county being respondents, without whose co-operation they could not act, not attending at the time and place mentioned in said writ, they, with said William H. Walker and the said Sheriff, remained at the County Court House for one hour, when, there not being a majority of the said Board of Canvass present at any time, without which they could not act as aforesaid, they, with the others of the said Board of Canvass then present, separated, being unable to act as commanded by said writ by reason of the absence of a majority of said respondents.

They also admitted as substantially true all the averments in the petition and submitted themselves to the further orders of the Court.

*Mr. Jones* also presented and read the return of the Sheriff, as of this date, who set forth that he attended as stated in the last return, using substantially the same phraseology, and remained for one hour but by reason of the absence of the majority of the respondents

he was unable to further obey the commands of the writ and he also submitted himself to the further orders of the Court.

*H. Ridgely* presented and read the return of William H. Walker, respondent, as of the same date.

He also set forth his own attendance at the time and place named in the writ with the six inspectors last named and the Sheriff, and that he was ready and willing to ascertain the state of the election, and remained one hour, but was unable to act as commanded by said writ by reason of the absence of a majority of said respondents. And he submitted himself to the further orders of the Court.

*R. R. Kenney*, for certain of the respondents, presented and read the answer of nine other respondents named therein, which, with correction of clerical error afterwards made by consent, was in substance as follows :

It was a joint and several return of Thomas McCoy, Abel S. Faries, William H. Greenwell, John L. Scotten, Thomas H. Baxter, Alexander J. Draper, Samuel C. Hughes, John W. Sheldrake and Frank Tumlin, who were inspectors of nine of the election districts, as stated in the petition.

They denied knowledge of the allegations of Section 1 of the petition and admitted the facts set forth in Sections 2 and 3 of the petition.

Responding to the first paragraph of Section 4 of the petition, it was admitted that (assuming that the persons acting as inspectors were legally elected or chosen as such, which was expressly denied) elections were held in the Western Election District of Duck Creek Hundred, in Kenton Hundred, in Little Creek Hundred, in the Third Election District of East Dover Hundred, in the Western Election District of East Dover Hundred, in the Western Election District of North Murderkill Hundred, in Election District No. 1 of South Murderkill Hundred, and in Election Districts Nos. 1 and 2 of Mispillion Hundred. But they denied that any election

was held in the Eastern Election District of Duck Creek Hundred, and also that elections were held in the remaining districts in Section 4 of the Petition enumerated, except in form only, for the following reasons :

"1.   The election law provides that there shall be voters' assistants at each election district in this County, chosen from the two principal political parties.   The Democratic Party and the Republican Party were decided by the only officers authorized to make such decisions to be the two principal parties for the election held on the third day of November, 1896.   Yet notwithstanding the said provisions of law and the said decision, voters' assistants from the Republican Party were not chosen in either the First or Second Election District of East Dover Hundred, the Eastern Election District of North Murderkill Hundred, the Election District No. 2 of South Murderkill Hundred, or Election Districts No. 1 and 2 in Milford Hundred."

And that in the Eastern Election District of Duck Creek Hundred, the majority of the election officers whose duty it was to make selection of voters' assistants, selected a man from the Republican Party as one of such officers, and installed him in such office in strict accordance with the law in that behalf ; but one of the judges of elections in that district, being a member of the Union Republican Party and not of the Republican Party, refused to permit the voters' assistant selected to perform his duties as such officer, and declared that no election should be there held unless he could name the voters' assistant from the party of which he was a member, further declaring that if he was not allowed to so select the voters' assistant, there would be riot and bloodshed ; that one of the clerks, being also a member of the said Union Republican Party, following the threats so made, refused to deliver the ballots, saying that he so refused because he had been directed so to do by the said Union Republican Judge.   Said threats of violence were repeated by sundry other persons, members of the said Union Republican Party, black and white, in and about said election place in said District.   That said clerk had there, concealed about his

person, during the day, a loaded pistol or revolver, which he delivered to another person after the hour for closing the polls.

And that, by reason of these said threats of violence and
arms, the voters of that District were prevented from assembling
and exercising the right of suffrage.

"That the voters' assistants other than such Democratic officers, were, in the election district last above enumerated, selected
from the members of the Union Republican Party and not from
those of the Republican Party.

"That the voters' assistants so selected from the Union Republican Party, the respondents are informed and believe were
selected for the purpose of communicating by some sign or signal,
agreed upon, to the workers and managers of the Union Republican Party outside of the election rooms, how the persons with
whom they had corruptly contracted, did vote.

"And your respondents are further informed and believe that
such voters' assistants did carry out such corrupt and fraudulent
understandings and agreements, whereby bribery was carried on to
such an extent as to defeat the will of the people."

It was further set forth that respondents were instructed, through
a letter addressed to the Chairman of the Democratic County Central Committee of Kent County, by the Attorney General of the
State dated November 2, 1896, purporting to be an answer to the
question : "From which two of the several political parties now
in this State shall the Voters' Assistants, who are to serve at the
election to be held on Tuesday, the 3d inst., be selected ?" The
exact language of the letter, which is set out in the answer as being
signed "Robert C. White, Attorney General," is as follows : "I will
state the following as my interpretation of the law as applicable to
the facts. The statute provides that the Inspector and Judges of
each hundred or election district shall select an honest and capable
man from each of the two principal political parties to serve as Voters'
Assistants, and as the Democratic and Republican parties are the two
principal political parties the selection must be made from them ;
and moreover in as much as what is known as "The Regular Re-

publican party" in contradistinction to " The Union Republican party" in this State, has been and is recognized by the National Republican Committee of the Republican party as the representative of that party in this State, and also by the Clerks of the Peace of the several counties of the State, the selection must be made from that political party and from the Democratic party.    Otherwise there would be sufficient grounds for the throwing out the vote of every hundred and election district where the selection was not thus made."

" 2.  That there were no returns from West Dover Hundred before the alleged Board of Canvass.    That a majority of the election officers (assuming that the persons acting as such officers were legally elected or appointed) of said Hundred, refused to make and sign any certificate certifying the result of the alleged election in that Hundred, because by the open and notorious corruption, bribery and fraud practiced at the polling places in said Hundred, and participated in by the voters' assistant other than the Democratic voters' assistant, the election in said Hundred was a mere auction, rendering it impossible to ascertain the expression of the popular will in that Hundred.    That the same corrupt condition of things prevailed in the other of said above named hundreds and election districts.

" 3.   That in some of the above named election districts and hundreds, the ballot boxes were opened during the progress of the election, contrary to law.  That the bribery and corruption practiced in the above named hundreds and election districts, on the day of the last election, together with numerous violations of the plain provisions of the election laws, which then and there took place, were so open and notorious as to render the shameful character and conduct of those alleged elections unprecedented in the history of this County, and to make it manifest that their results were the direct fruits of this wholesale fraud and corruption.   And further, that these said glaring violations of the laws of this State against bribery and corruption, were the outcome of a *conspiracy* entered into some time prior to the late election by certain members of the

Union Republican Party, to the end that the will of the people of this County might be effectually suppressed. That all the facts above set forth were so open and notorious as to be matters of general knowledge among the people of the entire County That the said respondents being cognizant of all the facts narrated, did not sign certificates representing the results of such corrupt and fraudulent elections for the reason that it would be giving their sanction and support to the disreputable agencies by which they were brought about, and for the further reason that it did not appear to your respondents from the reading of the returns that the alleged certificates from the said election districts and hundreds were signed by the officers of election or a majority thereof of said respective districts.

" And your respondents did not examine the said papers purporting to be certificates of election for the said several districts and cannot say whether said papers purporting to be certificates of election were or were not signed or were in due form."

To the second and third paragraphs of Section 4 of the petition it was replied, that Thomas McCoy was duly appointed inspector of election for the Eastern Election District of Duck Creek Hundred, but as to the other persons named in the said third paragraph of said Section 4, it was denied that they were either elected or duly appointed inspectors for the hundreds or election districts respectively for which they are therein named, that is to say ; there was no law authorizing the election of such officers, and they were not duly appointed by the Levy Court Commissioners of their respective hundreds, nor were they chosen by the electors present at the opening of the polls on the morning of the election, November 3, 1896.

The respondents admitted the statement of the votes cast for each person voted for as enumerated in Section 5 of said petition, so far as they related to the votes received for each person voted for in the Western Election District of Duck Creek Hundred, in Kenton Hundred, in Little Creek Hundred, in the Third Election District of East Dover Hundred, in the Western Election District

of North Murderkill Hundred, in Election District No. 1 of South Murderkill Hundred, and in Election Districts Nos. 1 and 2 of Mispillion Hundred, but denied the statements of the votes alleged to have been cast and received for the respective persons voted for in the remaining election districts as set forth in said Section 5, because no returns were or could have been made from those Election Districts, for the reasons set forth in this return.

The respondents further denied so much of Section 5 of the petition as related to the total votes and pluralities received for the persons named in said Section, but averred that the total vote and pluralities received for each person named were for the reasons set forth in this return, different from those set out in the petition, as, for example for Senator in the General Assembly, it was averred that Samuel R. Meredith, received 2036 votes, John Heitshue, received 38 votes, James Frank Allee, received 1722 votes, and John Heyd, received 91 votes, giving Samuel R. Meredith a plurality over his highest competitor for said office of 370 votes.

The answer then stated in the same manner, the votes alleged by the respondent to have been received by each and all of the candidates voted for at said election for each office to be filled thereby, showing pluralities for the Democratic candidates for representatives in the General Assembly, an average of 290 votes; for Sheriff, of 198 votes; for Coroner, of 92 votes; for County Treasurer, of 89 votes; for Levy Court Commissioners, an average of 207 votes; for delegates to the Constitutional Convention, an average of 277 votes; whereby it was averred they were duly elected.

The respondents admitted the statements as set forth in the first, second, third, fourth, sixth, seventh and eighth paragraphs of section 6 of the Petition, as mere conclusions of law and of alleged facts.

But in answer to paragraph five of Section six of the petition, while the duty of the Board of Canvass as set forth in the petition was admitted, assuming that there had been legal elections, it was averred that legal votes were cast in West Dover Hundred, but that no certificates thereof were made and signed, and therefore the

" alleged Board of Canvass " could not on November 5th, or November 23d, 1896, nor could it under a peremptory writ of mandamus, ascertain the state of the election in the county by calculating, etc., and make the certificates as by law required.

It was also stated that the said respondents with other alleged inspectors of the County met at the time and place as set forth in the ninth paragraph of the said section 6 of the petition, and that the Sheriff attended, but it was denied that he remained there "continuously as the presiding officer of the said alleged Board of Canvass until its adjournment," and also that the persons therein named constituted a Board of Canvass for the reasons set forth in this return. It was admitted that a paper " purporting to be a certificate for each hundred or election district, represented by these respondents, was delivered to the Sheriff except certificates of election for the Eastern Election District of Duck Creek Hundred, and for West Dover Hundred;" but in answer to the 11th paragraph of said section 6 it was said that there was no certificate of election in West Dover Hundred for the reasons before set forth.

For return to the 12th paragraph of said Section 6 of the petition, it was answered that respondents did ascertain the state of the election by calculating, etc., " all the votes for each office that had been given in the Western Election District of Duck Creek Hundred, in Kenton Hundred, in Little Creek Hundred, in the Third Election District of East Dover Hundred, in the Western Election District of North Murderkill Hundred, in Election District No. 1 of South Murderkill Hundred, and in Election Districts Nos. 1 and 2 of Mispillion Hundred, which constitute all the Hundreds and Election Districts in this county in which elections were admitted on the assumption in this return set forth, to have been held, for every person voted for for such office." And they denied that they had " refused to ascertain the state of the elections throughout the county in the Hundreds and Election Districts in which elections are admitted on such assumption to have been held as aforesaid, by calculating the average amount of all the votes for each office that had been given in all the said Hundreds and

Election Districts in the county for every person voted for for such office." They did refuse to canvass and calculate the number of votes pretended to have been given in the Hundreds and Election Districts named in Paragraph 13 of said Section 6 of said petition, for the reasons before set forth, and also because it did not appear from the reading of the return and such "alleged certificates" were signed by the officers of election or a majority thereof.

In reply to Paragraphs 14, 15 and 16 of Section 6, the respondents asserted that they made before any adjournment or separation of said alleged Board of Canvass, certificates of election certifying what the respondents believed to be the just and fair result of the election, which were signed and delivered to the proper officers. In reply to the 17th and 22d paragraphs of Section 6, it was denied that the action and conduct of respondents worked any injury and detriment to the petitioners or any one of them, or deprived them of any right to which they were or are fairly entitled.

For return to the 18th paragraph of section 6 it was said that they did refuse to calculate the votes pretended to have been cast for said several officers in the Hundreds and Election Districts referred to in said paragraph, for the reasons hereinbefore stated, and they were therefore unable to say what the plurality of such pretended votes was.

For return to the 19th, 20th and 21st paragraphs of section 6 it was said that "whatever was done as set forth in said paragraphs was not done by the persons therein named as constituting the alleged Board of Canvass or a majority of said alleged Board, or as authorized by said Board or a majority thereof.

In reply to the 23rd paragraph of Section 6 it was alleged that petitioners had other adequate legal remedies for the alleged grievances of which they complained.

It was further returned that the papers purporting to be certificates of the election were delivered to the Sheriff of Kent County, and were no longer subject to the control of the respondents, and as said papers were out of their possession and there was in

the Alternative Writ no order to the Sheriff to produce them before the alleged Board of Canvass, when it should meet under the order of the Court, they could have no certificates from which to ascertain the state of the election throughout the county, and issue certificates of election in accordance with such ascertainment.

It was also insisted that the averment that a certificate of election for each Hundred or Election District was presented to the Sheriff at the session of the alleged Board of Canvass, did not set forth with sufficient particularity the papers purporting to be certificates of election in the several Hundreds and Election Districts to show that they were such certificates from which the alleged Board of Canvass was bound to ascertain and to calculate the state of the election throughout the county. Also that the Writ of Mandamus was not directed to the proper persons in that it was directed to the persons alleged to be inspectors, whereas it should have been to the Sheriff and other alleged members of the alleged Board of Canvass, commanding them as such Board to reconvene and perform the mandates of said writ.

It was also asserted that the alternative writ did not follow the petition and order, in that a new party, to wit, Samuel L. Shaw, Sheriff of Kent County, was joined without any authority therefor.

The respondents averred and tendered proof, that the papers purporting to be certificates of election from the First Election District of East Dover Hundred, the Eastern Election District of North Murderkill Hundred, and both the Election Districts of Milford Hundred, did not show for which Hundred any candidate for Levy Court Commissioner was voted for for said office.

It was also returned that no notice of the mandamus proceedings in this case at any step had been given to any of the other persons who were voted for at said elections for said offices, and whose rights were shown by the petition and writ to be involved in the result.

The failure to make any demand upon these respondents to do the acts and things prayed for in the petition, and commanded in

Del.]  STATE, *ex rel.* ALLEE, *et al.* vs. McCOY, *et al.*  503

Motion to Amend Petition.

the writ, was set up as a further defence. Finally it was averred that the respondents " with the Sheriff and other persons called inspectors of Kent County in the petition and writ of mandamus, did meet as a Board of Canvass at the time and place required by law and did then and there perform all the duties required of them by law as such Board of Canvass as hereinbefore set forth, and after so doing, did adjourn and separate, and that therefore, having performed their duties, are *functus officio,* as inspectors and as a Board of Canvass, assuming that they were inspectors or did constitute a Board of Canvass." They therefore prayed to be dismissed with their reasonable costs, etc.

After the several returns had been read and filed, *W. H. Hayes,* for the relators, moved for leave to amend the petition, the order for the rule to show cause, and the alternative writ, by adding to the enumeration of parties respondent, where they are mentioned, as such, in each of said papers the words :

" And Samuel L. Shaw, Sheriff of said county of Kent, constituting the Board of Canvass for said County of Kent."

While we do not wish to be considered as admitting that our position heretofore has been incorrect, at the same time we think it proper to apply for these amendments in order that any doubt which may exist as to parties may be removed.

We think under the Constitution and Statutes of this State, with which your Honors are familiar, that we are entitled to it. Const. Art. VI. § 16 ; Rev. Code 849.

Under Section 11 of that Act it is provided that in any civil cause pending in this Court amendments of process, pleading or proceeding in form or substance may be allowed at any time before judgment. If then this is a civil cause there can be no question ; and that it is such is settled in this State. *Swift vs. State,* 7 Houst. 346 ; *Knight et al. vs. Ferris,* 6 *id.* 320. In the same Court when this subject was much considered it was said that any amendment made for the purpose of promoting justice and getting at the merits of the case will be allowed. *White vs. McIlvaine,* 5 Harring. 381.

In late years the great strictness of allegation in mandamus has been relaxed having become unnecessary after the stat. 9 Anne; and it is said that if the alternative writ is defective, on a motion to quash or a demurer, the relator will be allowed to amend if he so desires; Merrill, Mand. § 271; *Gale vs. Townsend,* 77 Tex. 465; *Commonwealth vs. Pittsburg,* 34 Pa. 496, 515.

*Penington,* for the respondents, contended that the application came too late. An amendment should always be made at the earliest possible moment and a claim of right to amend should have been asserted at the return of the rule to show cause,

*Wolcott,* on the same side, suggested as another objection to the amendment that the alternative writ had issued, been served, and by a portion of the respondent, obeyed.

Again, the real effect of granting this application would be to make a new party to the proceeding, and this it is contended cannot be done by amendment.

At the return of the rule to show cause, the relators were apprised of the defective character or quality of their petition and they elected to stand upon the record. Having let that opportunity pass, they must be held to have waived any right to amendment or to correct the record in conformity with the theory now advanced.

*Pennewill,* for the relators, in reply. The amendment proposed raises no new issue, suggests no new facts, in no way affects the interest of the respondents in this case, and changes no single averment in the petition. No one is injured or damnified, and therefore there can be no real or substantial objection to granting the motion.

The right to amend at any time before judgment is secured by the Constitution, to the end that causes may be determined according to their real merits and that such a determination shall not be hindered. If then this amendment was permissible at any time it is permissible now and if the right of amendment exists at any

time before judgment it is at the election of the party seeking it when the application shall be made.

We contend that the Sheriff is not an essential party but that he is practically made a party by coming in, appearing, and accepting service, but in order to make the proceeding consistent from beginning to end and to secure trial upon the real merits avoiding possibility of a decision upon technicality, we propose the amendment.

LORE, C. J.  We think the amendment ought to be allowed. Let it be made.

GRUBB, J., dissenting.  I am of the opinion that the application comes too late.  The opportunity for it came first when a motion was made to strike out so much of the Sheriff's return as it was claimed had the effect to make him a party.  I intimated at that time that probably it would be better to amend but it was not done.  Then upon the motion to quash the alternative writ it was insisted for the relators that the Sheriff was a party and in my dissenting opinion on that motion I again suggested the amendment.  That was the second opportunity.  Now that the Court has decided practically that the amendment is not required by refusing to quash the writ, why should the amendment be granted.

In the Sanders case, 1 Houst. 107, upon a rule to show cause why the writ should not issue, the Court allowed the writ to issue, and application was made to amend, and the application was refused.  That was a decision of our Court of Errors and Appeals.  Then after this, in another case, that of *Houston vs. Levy Court of Sussex County*, 5 Harring. 15, there was a motion for a rule to show cause, and on the argument of that rule, not on the motion to quash the writ, but on the motion for the rule to show cause, (Judge Houston had brought the case against the Levy Court as a body without naming the members of it, and in that respect it was defective,) an application was made to set aside the rule, but the Court allowed him to amend.  That, as I

say, was on the rule to show cause, and on the first opportunity of doing it, but not after the second, as is the case here.

An application for the imposition of terms, by requiring payment of costs, was refused.

*W. H. Hayes*, for the relators, then moved to quash and strike off the answer of the contesting respondents upon the grounds that it was evasive, ambiguous, inconsistent and insufficient.

*Wolcott*, for the contesting respondents, gave notice that if the Court should hold that the answer was subject to any or all of the defects suggested, his side would ask leave to make and file a new answer.

Some discussion at the bar developed the fact that counsel on both sides agreed that the discussion of this motion would involve the whole question on the merits, whereupon the Court adjourned until November 27, 1896, at 10 o'clock a. m., at which time the session was resumed for hearing argument on the motion to quash the return.

*W. H. Hayes*, for the relators. Before the statute of 9 Anne there was no such thing known to the common law as a demurrer to a petition for mandamus, or to a return or a traverse. So in this State under the decision of this Court in the Wilmington & Susquehanna Bridge case, we cannot traverse and we cannot demur to the return of the alternative Writ. We are remitted either to acknowledging it as absolutely true, or to a motion to quash it. We have done the latter and it raises every question in this case that is well pleaded in the answer, so far as it is responsive and sufficient.

This is not an action to try the ultimate right of the candidates, but it is an action whereby it is sought by these relators, with the aid of the writ of the State, to compel this Board of Canvass to do their duty, if they have not done it. This action is between the relators and these respondents as members of the Board of Canvass,

and the wrong alleged and sought to be righted, is the non-per-formance of a public duty imposed upon these respondents by the statutes of the State of Delaware. That the duty to calculate the aggregate of the vote throughout the County is imposed by the statutes of the State of Delaware cannot, and I do not think will, be denied.

We allege that they did not perform that duty; and for the non-performance of it and to compel them now to perform it, we come into this Court and ask for the writ of mandamus. And this is the question which is before the Court.

While it is true that the writ of mandamus will not lie to compel an inferior body, tribunal or individual to perform a judi-cial duty, there is none such imposed upon these respondents which is sought to be compelled to be done and performed in this pro-ceeding. If this is borne in mind, it takes out of this case much that has been injected into it.

Now the petitioners or relators in the case have averred, first, their qualifications. They are supported by the affidavits of twenty-five persons, and not denied. They are admitted by the return to have been properly on the ballot, properly nominated, and that their names as candidates for the several offices named were duly placed on the official ballot by the Clerk of the Peace of Kent County, pursuant to the provision of the statute in that behalf, and were voted for in the various hundreds and voting precincts of Kent County on the 3d day of November, 1896.

Then we have the duty imposed upon these respondents by the statutes of this State to make out certificates and to attend at the Board of Canvass, and to do what? Calculate the aggregate amount of the votes given in the county for the different persons voted for in the different hundreds and voting precincts. It is ad-mitted that they did not count the vote of six of the voting pre-cincts of this county cast at the general election, and why? There were two in Dover, two in Milford, one in South Murderkill and one in North Murderkill.

They say they did not do that, first, on account of the irregu--

larity in holding the election—something with which they had nothing to do—in regard to the selection of voters' assistants, and bribery is alleged. Well, bribery, if it was true, in this State, does not invalidate the vote cast. It only renders the persons participating in the bribery liable to the pains and penalties of the law, if indicted and convicted. Such is our statute law.

Then again they justify, by what? An unheard of thing in this State—the advice of the head law officer in the State, who stops not at signing his name individually to a letter, but signs it as the Attorney General of this State. Can this be any justification for the failure to perform a plain, positive duty, expressed in definite terms, pointed out and laid down in plain words by the statutes of this State; and which duty was to calculate the aggregate vote and ascertain the state of the election thereby?

Again, it is alleged in this answer that it does not appear to them from the reading of the returns or certificates that they were signed by the election officers or a majority of them, and in the same answer they say also that they did not examine those certificates and cannot say whether they were properly signed or not. What becomes of such an allegation? Not that they were not signed, but that it does not appear that they were signed by the election officers or a majority of them; and in the next breath, in the next paragraph, they say they did not examine them and cannot say whether they were signed or not. The precise language is: "And your respondents did not examine the said papers purporting to be certificates of election for the said several districts and cannot say whether said papers purporting to be certificates of election were or were not signed or were in due form."

Inconsistent, certainly. And by that admission they have closed their mouths to say anything in regard to the sufficiency or validity of any certificates presented to them, and that return is under oath. Therefore we have all their reasons for not performing what we contend was their duty on the 5th of November last.

I believe there is another reason alleged, that they were not elected inspectors, because there was no provisions of law for such

election. That is the averment, except in the case of Mr. McCoy, who was appointed by the Levy Court, but in his District no election was held.

By all rules of law, where there is a *de facto* officer having the *insignia* of office, dealing with the public without objection— and they admit that the relators were voted for at these various election districts and voting precincts of Kent County, where these respondents were inspectors—it is, first, against public policy to say that there was no election ; and, secondly, their mouths are shut to allege it.

In regard to the duties of the Board of Canvass, the provisions of the law which govern it will be found in the Rev. Code, (1893), 167, 168, 169, 170.

In these statutes their duty is clearly and specifically defined. The certificates of election are to be delivered by the inspector to the presiding officer of the Board of Canvass, and even the section which empowers the Board of Canvass to open the ballot boxes clearly shows that it is only with the certificate that the Board of Canvass has to do. The duty of the Board is prescribed entirely by statute, and is clear, plain, positive and direct. That duty is to ascertain the state of the election throughout the County by calculating the aggregate amount of all the votes for each office that shall have been given, and this calculation is to be made not by counting ballots, but by inspection of the certificates.

The principles of law applicable to the case are clear and well settled.

I. The function of the Board of Canvass in ascertaining the state of the election by calculating the aggregate amount of all the votes, given in the different Election Districts of the County, for every person voted for, for such office, is ministerial. They are required merely to calculate the aggregate amount of the votes given; and any one who understands arithmetic can do this. It can be done (and was in New Castle County this year) by machines. They have power to do nothing more. The addition of the amount of votes in the several election district certificates gives the aggregate

amount of the votes given, and thereby they ascertain the result of the election throughout the County. *People vs. Van Slyck*, 4 Cowen, 297, 323 ; *People vs. Turnpike Co.*, 23 Wend 222, 228 ; *Ex parte Heath*, 3 Hill 42, 47 ; *People vs. Fuller*, 29 Ill. 413, 420, 425 ; *State vs. County Judge*, 7 Ia. 186, 197-203 ; *State vs. Bailey*, *id.* 390, 399 ; *Bradfield vs. Wart*, 36 *id.* 391, 295 ; *Lewis vs. County Commissioners*, 16 Kan. 102, 107 ; *Brower vs. O'Brien*, 2 Ind. 423, 429 ; Merrill, Mandamus § 178 ; *Strong vs. Pickering*, 20 Pick. 484, 497 ; *Luce vs. Mayhew*, 13 Gray, 83, 85 ; *Clark vs. Board of Examiners*, 126 Mass. 282 ; *Smith vs. Lawrence*, 49 N. W. Rep. 7, 13 ; *State vs. Gibbs*, 13 Fla. 55 ; *Ferris vs. Knight, et al.*, 6 Houst. 170 ; *Knight, et al. vs. Ferris*, 6 Houst. 328.

II. " After the state of the election shall have been ascertained by calculating the votes as aforesaid " the Board makes and signs certain certificates as provided in Sections 29, 30 and 31. Rev. Code, 1893, 169, 170. This, too, is a ministerial duty. See cases cited *supra*.

III. These duties imposed on the Board of Canvass being public ones that belong to the defendants to do. A formal demand or refusal is unnecessary. The public duty makes the demand, and the omission to perform is the refusal. *State vs. County Judge*, 7 203 ; *State vs. Bailey, id.* Ia. 395 ; *Lewis vs. County Commissioners*, 16 Kan. 102.

IV. The Canvassing Board cannot reject returns, or refuse to sign a certificate of election, because illegal votes were received, or other frauds or irregularities were practiced at the election. Merrill, Mandamus § 179 ; *Parker vs. Emminger*, 74 Pa. 479, 483, 485 ; *Smith vs. Lawrence*, 49 N. W. Rep. 7; *Rice vs. County Judges*, 7 Ia. 202 ; *Hudmore et al. vs. Slaughter*, 70 Ala. 546, 551; *Kisler vs. Cameron et al.*, 39 Ind. 488 ; *Willeford et al. vs. State*, 43 Ark. 62, 66 ; *Lewis vs. County Commissioners*, 16 Kan. 102–108.

Grubb, J. Suppose they are not signed by the persons required by law to sign them ?

*Mr. Hayes.* In the language of the case in 3 Hill it appears that there would be no election there. But in addition to that, in this case it is averred eleven times in the petition that the result in West Dover Hundred would not change the result in the county— and this is admitted in the answer,—would show a plurality of ten votes or under for the relators. Also, that the Board of Canvass refused to open the box and take the certificate therein out, and that is alleged in the answer.

GRUBB, J. You did not allege that there was any box or any certificate in it, if any had ever been made.

*Mr. Hayes.* It is presumed, in the absence of anything appearing to the contrary, that these officers did their duty. *Kisler vs. Cameron,* 39 Ind. 488.

V. It is doubtless true that the writ of mandamus only issues when there is no other " specific and adequate legal remedy," and part of the prayer in this as in every case is the averment, " there being no other adequate remedy in the premises." Our own Court of Errors and Appeals has in very brief manner stated the exact law upon this point in *Swift vs. Richardson,* 7 Houst. 436, in the following words : " The writ of mandamus only issues where there is a clear and specific legal right to be enforced, or a duty which ought to be and can · be performed, and where there is no other specific and adequate legal remedy."

To oust this Court, therefore, of its jurisdiction and power to grant this writ, it must appear that there is some other " specific and adequate legal remedy." It is necessary, therefore, to look, first, at the injury complained of, and next to consider what " specific and adequate legal remedy " there is for such legal injury.

The injury is, first, the refusal of the Board of Canvass to take into consideration, in ascertaining the result of the election, the votes of all the voting districts in Kent County, which were returned to the Board of Canvass, and, secondly, the failure and

refusal of the Board of Canvass to issue a certificate of election to the complainants, who, upon the canvass of all of said returns, have pluralities in their favor, and are on the face of the returns elected.

The right of the complainants infringed on is to have the vote thus canvassed and certificates issued in accordance with such canvass. It follows that the only " specific and adequate legal remedy" is the performance, under legal compulsion if. necessary, by the Board of Canvass, of their duties in this particular.

VI. The ultimate title to the offices in question is not and cannot be litigated in this proceeding. This proceeding is not a contest for the title of the officers in question. It involves simply the right of these complainants to have the vote canvassed according to law, and certificates in accordance with such canvass. These certificates would be not final proof of title to the offices in question, but only *prima facie* evidence.

None of the provisions of Chapter 23 of. the Revised Code of 1893, and the chapters of the statutes of the State therein set forth, provide any specific and adequate legal remedy in the premises. None of the provisions of that chapter or these acts have any reference to the action of the Board of Canvass, or provide any appeal from any act of such Board, or any contest based upon the acts of said Board. The only method, therefore, of securing any remedy for the injury complained of is by the issuance of the writ of Mandamus prayed for.

*Strong's Case*, 20 Pick. 484 ; *People vs. Hillard*, 29 Ill. 421 ; *Bradfield vs. Wart*, 36 Ia. 295 ; *Rice vs. County Judge*, 7 *id.* 200 ; *Smith vs. Lawrence*, 49 N. W. Rep. 7.

Our own Court, in the case of *Ferris vs. Knight, et al.* 6 Houst. 146 and on error *id* 283, have recognized the propriety of this remedy and the jurisdiction of the Court, in a similar case to the one at bar.

VII. The fact that a canvassing board has already declared the result, and issued a certificate of election to any person, is no adequate answer a rule for a writ of Mandamus to canvass the

returns properly, and to declare the proper result, when the returns have been improperly counted or improperly rejected.

Merrill, Mandamus § 182 ; *Ferris vs. Knight, et al.* 6 Houst. 146 ; *Knight & Kennedy vs. Ferris,* 6 Houst. 283; *Ellis vs. Bristol Co., Com'rs.,* 2 Gray 370 ; *People vs. Hilliard,* 29 Ill. 419 ; *Johnston vs. State,* 128 Ind. 17 ; *People vs. Rives,* 27 Ill. 242 ; *Smith vs. Lawrence,* 49 N. W. Rep. 7 ; *State vs. Howe,* 44 *id.* 874 ; *Lewis vs. County Commissioners,* 16 Kan. 102.

VIII. Though the Board of Canvassers have counted the votes, announced the result and adjourned *sine die,* they may be compelled, by a mandamus; to reassemble and count the votes, if it appear that upon the first canvass they failed to perform their duty under the law. Merrill, Mandamus §§ 185, 241 ; *Ferris vs. Knight,* 6 Houst. 146 ; *Knight & Kennedy vs. Ferris,* 6 Houst. 283 ; *Johnston vs. State,* 123 Ind. 17 ; *State vs. County Judge,* 7 Ia. 186 ; *People vs. Nordham,* 99 Ill. 533 ; *People vs. Schiellein et al.,* 95 N. Y. 124 ; *Atty. Gen. vs. Canvassers of Iron County,* 64 Mich. 607 ; *State vs. Gibbs,* 13 Fla. 55 ; *Simon vs. Durham,* 10 Ore. 52 ; *Smith vs. Lawrence,* 49 N. W. Rep. 7 ; *Lewis vs. County Commissioners,* 16 Kan. 102.

IX. Under the statutes of the State, the inspectors who served on the 3d of November, 1896, the last general election, are still in office, and are in no sense *functi officio.*

Sections 38, 41, 42, 43, 44 and 46 of chapter 18 of the Revised Code, pages 172 and 173, show this, inasmuch as thereunder, in the case of a special election, the inspectors at the last general election would be the inspectors for such special election. *Carleton vs. People,* 10 Mich. 251–255 ; *Smith vs. Lynch,* 29 Ohio St. 261 ; *Yorty vs. Paine,* 62 Wis. 154 ; *Leach vs. People,* 122 Ill. 420.

It will be found from these cases that this election was a legal election, first upon the ground of public policy, that these persons exercised the duties of the office, dealt with the public without objection, that the public were ignorant of the state of the law, and they had all the insignia of office, and there was an actual office.

There is no claim here that the office is abolished, only the manner of filling the office. There is an office in existence which they held under the color of law and exercised the office and discharged its functions. And, in addition to that, another ground is that it does not lie in their mouths to raise it, and, for the third reason, it cannot be taken advantage of in this collateral proceeding, but only by a direct proceeding on the part of the State. In this way only can a *de facto* officer be ousted.

These inspectors, as it appears by their own answer and by the petition, having held this election, officiated at it and dealt with the public without objection, were in any event *de facto* officers and their acts as such are valid, and public policy prevents them now from alleging that they were not inspectors. *State vs. Carroll*, 38 Conn. 449. That case reviews the law of *de facto* officers from the fifteenth century. We cite also *Buck vs. City of Eureka*, 109 Cal. 504 ; *Fowler vs. Bebee*, 9 Mass. 231.

Considering now the point of certainty and sufficiency of the answer, it is settled that it must be direct, positive, consistent, not evasive, ambiguous or argumentative, I cite the following authorities : *Buck vs. Canal Commissioners*, 10 Wend. 26 ; *Queen vs. Kendall*, 1 Ad. & El. N. s. 364 ; 2 Salk. 432 ; 5 Term 75 ; Shortt, Ext. Rem. 387 ; Cooley, Const. Lim. 782 ; *State vs. Whitmore*, 15 Neb. 442.

*James Pennewill* continued the argument briefly on the same side.

This writ requires the respondents either to assemble and canvass the vote or to show some good cause why they have not done so. But it appears that the effect and burden of their answer has been not so much to show cause why these respondents have not counted the vote, as to show cause why this Court is incapable of compelling them to do it. And therefore their effort so far and the scope of their answer has been to keep away from the merits of this case, and if possible defeat the very ends of justice by compelling us to get out before we really get in.

And therefore, at every stage and at every step, the effort has been of the most technical character, and even in this answer, if you strip it of that which has nothing to do with the case—I mean those things which are alleged to have occurred at the election and of those other things which merely go to the ability of this Court to compel this Board of Canvass to act—there remains nothing, except the mere allegation, not that the certificates were not in form, or properly signed or certified, which they are bound under the law to count, but that it does not appear from the reading of those certificates that they were in proper form or properly signed. They go further and say, not that it does not appear, but that they never examined the certificates, and therefore cannot say whether they were in form, properly signed and certified or not.

Now that is the only point, after all, in this case. If the Board of Canvass had a right to refuse to count those three thousand votes cast in the county of Kent at the last election, they had the right by virtue of something that appeared upon the certificates certifying those votes from the different Hundreds. And I do not think it worth while, if your Honors please, for me to take up the time of this Court, or to consume the further time in the argument to show that fraud, corruption or any other thing that may have occurred at the election, has nothing to do with the consideration or determination of this case.

If there is anything decided by the preponderance and weight of authority in this country, and even by the opinion of the Court of Errors and Appeals in the case of *Knight and Kennedy* *vs. Ferris*, in this State, it is that the Board of Canvass is ministerial and not judicial, and that they have nothing to do, in the capacity of judging whether the election was conducted properly or not. Their duty is prescribed and laid down in a few words by a statute which limits and confines their labor to certain duties and powers, and we submit there cannot be any question as to the meaning of the statute and as to the interpretation of the law.

" The said Board of Canvass shall publicly, in the presence of

such electors of the County as shall think proper to be present, ascertain the state of the election throughout the County,"—how? " By calculating the aggregate amount of all the votes for each office that shall have been given in all the Hundreds of the County and for every person voted for for such office." And upon the calculating, upon the counting—for it is nothing more—to certify the result in the manner prescribed by law.

Now, if there was, as is alleged, fraud and corruption practiced at the late election in this county, that has nothing to do with, and is entirely foreign to the consideration of, this cause and is entirely irrelevant and out of place as a defence in this action.

It has never before been contended in any Court in this State that the Board of Canvass had any right to throw out votes upon any such ground. It is submitted that no such defence would be interposed now but for the inherent weakness of the case of the respondents and the further fact that it was advised that it had a right to throw out these votes. I am not here or elsewhere a defender or apologist for any such condition if it did occur. If such conditions existed they should be suppressed, but in some other tribunal and not here must they be dealt with.

It is alleged in the petition that certificates, in proper form and legally certified, were presented to the Board of Canvass for each Hundred except West Dover from which no certificate was presented.

With respect to that district it may be said in the language of one of the authorities already cited, that it would be monstrous if the with-holding of a certificate from some one Election District should defeat the vote of the entire County. If such a result were possible under the law no government could survive which rests upon the popular will and votes of the people. The same reasoning applies to the averment in the answer of the mere fact that no election was held in Duck Creek Hundred.

If the Board should be reconvened they would have full power to canvass the vote even though the certificates might not be present having gone out from their possession. When reconvened

it will have the same power that it originally had, if the certificate is not there, to open the ballot boxes and take the certificates therefrom.    It is the same Board and it has not yet discharged its duty; for that reason it is reconvened, and the authorities already cited are overwhelming to the effect that it is bound to do its duty and it is not discharged until the vote of the County are counted and certified.    That this has not been done appears from the admission in the answer that the votes of six districts out of fifteen, in which elections were held, were not counted.

The suggestion that the inspectors were not legally elected is scarcely worthy of serious consideration.    Upon the authorities cited, it is clear that in any case they were *de facto* officers who held the election and assembled here on the day prescribed for the Board of Canvass; they admit that they canvassed part of the votes and made some sort of a certificate and now they claim that they were not inspectors at all.    If ever there was a case in which the law of estoppel should preclude a man from pleading his own wrong this is such a case.

This is pre-eminently a proper case for resort to a writ of mandamus.    The action and the conditions are extraordinary; the emergency is great and pressing.    The action complained of was taken to defeat the ends of justice, and there is no other remedy competent to afford relief.    With respect to the subject matter of the application, under a government of law, where there is a legal right there must be a means of enforcing it, and where there is a wrong there must a legal remedy.    Here there is no other remedy, and *quo warranto* would not answer the purpose; it could not compel the Board of Canvass to count the vote.    This is not a proceeding to try the right to an office, but to compel officers to discharge their duty.

*B. Watson,* on the same side, contended that the acts of the Board of Canvass were simply ministerial, they had no judicial functions; no right to examine into irregularities or fraud, but simply to ascertain and tabulate the vote according to the law.

They cannot ascertain a part of the vote but must ascertain the whole vote, and the law is violated as much by dropping out 100 as by dropping out 600. In the language of the books, the duty with which they are charged is a purely inflexible, mathematical calculation, and can be performed by any one who can write and add up figures, provided he is honest. I claim that all that is necessary for a decision of this case may be found in the Revised Code. The Board cannot legally separate until the whole vote is canvassed, tabulated and ascertained, and its members are not *functi officio* as long as they have this specific duty to perform. This is the only adequate legal remedy ; the present case cannot be reached by *quo warranto*, that may come later, but is only necessary when the object is to oust one in possession of an office, to compel the performance of the duty resort must be had to mandamus. *State ex rel. Whitmore vs. Peacock et al.*, 15 Neb. 442 ; Cooley, Const. Lim. 782.

*J. B. Pennington*, in opposition to the motion, did not deny that the inspectors were ministerial officers, and therefore authorities on that point were useless, neither did he contend that those persons who acted as inspectors at the election did not legally so act. The point raised was a question of pleading. In the petition and the alternative writ, whether necessarily or not, they have averred that certain persons " were by election or appointment duly and legally constituted inspectors." It was averred they were constituted in either of two ways, they were not and could not have been legally elected, and on the other hand they declare that they were not duly appointed by the appointing power excepting in the case of McCoy, who was the inspector for the district in which no election was held. They are therefore not officers as said in the petition and writ of mandamus. If the allegation had been simply that they were inspectors at the last general election it would have been sufficient, but having averred that they became such in some peculiar manner it must be shown that they come within the terms of that allegation.

There are three methods of selecting inspectors: one by election, another by appointment and a third by choice of the persons present at the election. He contended that in mandamus, which has been termed a *quasi* criminal proceeding, there must be precision of allegation, and that the alternative form used in the petition is insufficient. He agreed with the counsel who last addressed the Court, that the Revised Code, together with this petition, did state nearly all the law and authority which the Court needs for the purpose of passing upon this question. When rightly understood and interpreted it covers the whole case. He then proceeded to examine and discuss the statutes prescribing the duties of the Board of Canvass.

He contended that it appeared from the record that in West Dover Hundred no certificate was made and signed, and therefore if the Board of Canvass were convened it could not by any possibility ascertain the state of the vote in the manner prayed for in the petition and directed in the alternative writ " by calculating the aggregate amount of all the votes for each office that shall have been given in all the hundreds." The command of the alternative writ was not, and therefore that of the peremptory writ cannot be, to calculate and ascertain the aggregate amount of all the votes certified to ; hence the case was brought within the principle which would not be denied, that the writ will not issue unless it is in the power of the person to whom the command goes to perform the duty. He described at length the charges of fraud and corruption as entering into the allegation and insisted that while the Court could not deny to the other side the full operation and effect of the law, they could be held down to the strictest letter of the law before being permitted to obtain a mandamus in view of the circumstances referred to.

He further contended that inasmuch as it appeared that there were on both sides certificates made out, one by the Sheriff as presiding officer and the seven Republican inspectors and the other by the majority of the Board in accordance with the law, the execution of the two classes of certificates which to him was the comple-

tion of their work to such an extent as to preclude the Court from issuing a writ of mandamus to compel another certificate to be made.

The legal principles relied on were as follows :

1. The rule is uniformly established that a relator must show a clear right, before relief will be granted by mandamus.

2.   Where any doubt exists as to the power of the Court to award mandamus, it will refuse the writ.

3. If the respondents, when convened, cannot do what they are required by the prayer of the relators to do, mandamus will not lie.

4. The Court cannot issue a mandamus directing certain persons to do a thing which they cannot voluntarily do without the mandamus ; *People, ex rel. Bailey vs. Supervisors of Green,* 12 Barb. 217.   It must also appear that the defendant has it in his power to perform the duty required of him.

It is an issue here in point of fact between these relators claiming upon one class of certificates on the one side, and the other parties who are voted for and who are certified to be elected on the other side.

The contention made was that this writ will be unavailing, for the reason that it would command them to do an impossibility, which of course they cannot do.

This Board of Canvass has certified to what it has done, and it has passed out of their control.   They no longer have any jurisdiction over the matter.

5. When the Board of Canvass has met and canvassed the vote and adjourned *sine die,* it has no power to reconvene and the Court cannot compel it to do so.   The Board is *functus officio.*

In the case at bar, under the statute, there is no prescribed time or any definite terms in which the duty required of the canvassing board shall be discharged, but language is used which is expressive, plain, emphatic, mandatory ; it states that the duty required of the canvassing board shall be discharged before any adjournment or separation of that board.

If there were no answer filed in this case; if there were no appearance by anybody, upon the face of the petition and the alternative writ, this Court, with the knowledge derived from both, could not issue a peremptory writ of mandamus. *Hadley vs. Mayor of Albany,* 33 N. Y. 603 ; *Ogleby vs. Sigman,* 58 Miss. 502 ; Shortt, Mandamus 247 ; *Ex parte Mackey,* 15 S. C. 322 ; *Clark vs. Buchanan,* 2 Gillfillan (Minn.) 298.

6. If the relators have any other adequate legal remedy they cannot invoke the aid of Mandamus. *Ex parte Mackey,* 15 S. C. 322 ; Merrill, Mandamus 224-225.

7. In modern practice mandamus is only an ordinary suit between two parties, plaintiffs and defendants ; therefore this case cannot be treated as a case involving an injury to the public, but as a suit between the rival parties holding certificates of election. And this being a suit between private parties, involving private rights only, they must be remitted to their ordinary remedies at law. And the issue raised in this case as to which of the two sets of certificates are the valid ones, is properly triable by a contest in the Legislature and Constitutional Convention and in this Court on *quo warranto.* *Knight and Kennedy vs. Ferris,* 6 Houst. 313.

8. Mandamus will not lie when the object is simply to secure for the relator a certificate of election of an office. *Magee vs. Board of Supervisors,* 10 Cal. 376 ; *State, ex rel. Sherburne vs. Horn, et al.,* 45 Mich. 160

9. The form of the certificates was not set out is in the petition. *People vs. Village of Crotty,* 93 Ill. 189.

10. The return is sufficient as to the averment that relators have other adequate legal remedies. Tapping, Mandamus 358.

*Wolcott,* on the same side. A principle of vital importance here has been thus well stated by the highest legal tribunal of this State.

"Though the functions of the writ" of mandamus "are fully as extensive as in England, although we have here given more scope to other remedies which often effect practically the same end," American legislation has " improved and liberalized the pro-

ceedings by mandamus, by relieving them of much of their former artificial and technical character, and it is well settled that a mandamus in modern practice is nothing more than an action at law between the parties, and it is not now considered as a prerogative writ." Saulsbury, Ch., in *Knight et al., vs. Ferris*, 6 Houst. 313. The point I wish to impress upon the Court is, that this is nothing more than an action between two parties, between plaintiffs and defendants, or relators and respondents; between parties who hold certificates of their election to the respective places mentioned and enumerated in those certificates and other parties who do not.

A certificate, as has well been said, is nothing more or less than *prima facie* evidence; it is a colorable title to an office. It settles nothing; and even if the Court were to issue this peremptory writ of mandamus which is asked for, it would settle nothing definitely. It would simply perhaps give color of title to the office to which these different parties aspire, or for which they are competitors before the people. That is all. Therefore it can not be urged that this is a contest between this Board of Canvass and the people of the County of Kent; and we will step down then from this lofty plane upon which it has been sought to argue this case; because, after all, it is a contest simply between these two parties.

This being so, why should not this case be remanded to the tribunal which has the final adjudication and determination of the questions underlying this controversy.

There are already in the hands of each of those persons certificates representing that each one is elected to the position mentioned in the certificate and they can both go before the Legislature of the State or the Constitutional Convention of the State and present their certificates. Then those certificates can be investigated. Then it can be ascertained whether any or all of these certificates are correct and whether they are upon a sure and a certain foundation.

LORE, C. J. Do I understand your proposition to be practically that this is a contest for office, and not the enforcement of a public duty?

Del.]    STATE, *ex rel.* ALLEE, *et al.* vs. McCOY, *et al.*    523.

Argument for Respondents.

*Mr. Wolcott.* That is what it amounts to, because that is the ultimate aim and purpose of this mandamus. And it is held that the Court will not deal with such a question as that, raised upon a writ of mandamus. *Sherburne vs. Horn, et al.,* 45 Mich. 161.

This writ will not issue where there is another adequate legal remedy by which they can accomplish really what they desire and what they want. This accomplishes absolutely or practically nothing. And because of the inefficiency of this writ to accomplish the end desired, this Court will not award a writ of mandamus if there is another adequate and specific remedy provided by statute. The provision of the statute is merely a confirmation of the provision of the Constitution which makes each house of the General Assembly the exclusive judge of the election and qualifications of its own members. But the Legislature was not content with that. It enacted that into a law by which it shall be done, and thereby practically said that this was to be the exclusive remedy for the trial of a case of that kind; otherwise why should they have gone to the trouble to enact into a law that which was commanded and required by the Constitution of the State itself?

Then, the Constitutional Convention, being a law unto itself, of course can do the same thing; because you cannot limit the power of a Constitutional Convention. They represent the people in their primary and sovereign capacity.

*In Ex parte Mackey,* 15 S. C. 322, cited as authority for reconvening a Board of Canvassers, the Court voluntarily said that if the Legislature had provided the same remedy as the constitution of the United States has provided, then it would be considered an adequate legal remedy and would circumvent the employment of the writ of mandamus to accomplish that purpose.

Another proposition which should be an insuperable barrier to the issuance of this writ is that this Board must have the power to do that which it is commanded to do by the writ; otherwise the Court cannot award the writ of mandamus.

Under the facts of this case, it is absolutely impossible for this

Board of Canvass to reconvene and perform the act which their prayer asks you to order them to perform. It cannot be done.

It appears by the petition that there was an election in West Dover Hundred of this County. It appears by the answer and return that there was an election, but it also appears that there was no certificate—the only mode pointed out in the law by which to ascertain the state of the election in the County.

They cannot open the ballot boxes and go in there and count the votes. That cannot be done; because the law does not authoize it. It cannot be done because there is no certificate, according to the facts in this case, and that is the very data from which the votes in West Dover Hundred can be ascertained and computed.

It cannot be said that the inspectors or the election officers of the Hundred can deprive the people of an election in that way, because any citizen of that Hundred, who had been deprived of his vote thereby could apply to this Court for a mandamus to compel those election officers to assemble and give a certificate in accordance with the votes deposited in the ballot box. That was the first step in this case. The law makes no exception. It says all the Hundreds. Now, if it could be said that this vote was lost, it might be passed by and ignored. But that is not so. The votes are in the ballot boxes. They had been computed; but the certificate representing the state of the vote, is not signed, and there is therefore a complete absence of all papers or data by which to ascertain the state of the election in that Hundred. They cannot go into the ballot boxes and count the votes, because that would be just as much a violation of the law as that with which the inspectors are charged, and if this Court orders a mandamus, it will not order them to violate the law in order to correct a violation of the law.

It is said that this Board did not legally adjourn. But clearly the injunction against separating or adjourning does not apply until these votes are calculated and the state of the election as-

certained.  It only applies in cases where the vote has been ascertained and calculated in accordance with the statutes.

It will not do to say that there was no power to compel the signing and making of the certificate representing the vote in West Dover Hundred.  Because it was in the power of the Sheriff of Kent County on that very day to have compelled—if such a one existed—the production of such certificate, or to have applied to the Superior Court for a writ of mandamus to compel the Board to re-assemble and perform its original duties.

But none of these things were done.  The Sheriff did not make any effort to procure the certificate.  No body who had been " robbed," of his franchise has ever applied to the Court for a mandamus to compel the calculation of the vote of that Hundred, and to sign the certificate representing the vote, so that it could be calculated and computed by the Board of Canvass.

In the face of these facts, how is it possible for this Court to issue this extraordinary writ to command a body of men to do that which it clearly appears they cannot legally do.  No case cited is better reasoned on this point than *Clark vs. Buchanan,* 2 Gilfillan (Minn.) 298.

In the case at bar, there was no Board of Canvass in existence at the time the command was framed, as was the case in Minnesota. Nevertheless, there it was held that " It was not in their power to perform the act required."

This Board has separated and adjourned, and that is the limitation of its existence.

The limitation of their legal or official existence is the adjournment or the separation.  And when the adjournment takes place, then their duties by law are ended, and there is no way of engrafting them upon them again.  The primary duty of the inspectors is to hold the election and their secondary or *ex officio* duty is to form this Board of Canvass and do their work.  They are only a Board of Canvass by virtue of their office of inspector and they can only get together in the mode prescribed by the statute. They cannot come together in any other mode than that which is

prescribed by law, and if they come together in any other way it is an unlawful coming together.　Would this Board of Canvass have the right to re-assemble themselves and to do this act?　Would they have the right to assemble on their own motion and do the act which they are prayed to do now.

If that question is answered in the negative, it disposes of this entire question.　It can hardly be contended that they would have the right to do this act, and if they have no right upon their own motion to do it, then this Court has no right to command them to do it because it cannot direct its command to a person to do a thing which, if that person desired, he could not voluntarily do.

It has been alleged that the answer under consideration is inconsistent, ambiguous, evasive and insufficient.　Whatever may be said as to its sufficiency, there would seem to be no ambiguity in the statement of the reasons upon which the respondents based their action.

They specifically deny that any election was held in the Eastern Election District of Duck Creek Hundred, and in certain other Hundreds they deny that elections were held, except in form, for the reason that the election law provides for voters' assistants, at each election district, chosen from the two principal political parties, and that in the Hundred in question voters' assistants from the Republican party, which was one of the principal political parties, were not chosen.

It is alleged that in East Duck Creek Hundred a Union Republican judge and clerk who were legally appointed, refused to hold an election unless the former could have the right and power to name the voters' assistant, and accordingly the holding of an election was prevented by threats of riot and bloodshed.　In the other district referred to, the holding of a real election was prevented by the method of selecting the voters' assistants, not to promote a legal expression of the popular will, but to suppress it, so that the elections were such only in form.　It is to shield such offenses as these that the Court is asked to interfere, upon a mere legal technicality.

Del.]  STATE, *ex rel.* ALLEE, *et al.* vs. McCOY, *et al.*  527

Opinion.

*Ward*, for the relators, replied.

LORE, C. J., delivered the opinion of the Court.

The application in this case is for a peremptory writ of man-damus to compel the Board of Canvass of Kent County, to recan-vass the vote cast in that County at the last general election, held on the third day of November, 1895.

The facts are substantially as follows:  At that election, the relators were the candidates in Kent County of the Union Repub-lican Party for the following offices, viz :  James Frank Allee, for State Senator ; Thomas C. Moore, William H. Moore, Morton E. Downes, Luther S. Conwell, George C. Hering, Jason B. Simmons and George W. Marshall for State Representatives; Frank Reedy for Sheriff; John M. Knight, for Coroner; Jabez Jenkins, for County Treasurer ; William D. Hudson, Thomas C. Roe, William R. Postles, David Cooper, and James Wilbur Powell for Levy Court Commissioners ; John B. Cooper, Abner K. Cole, David S. Clark, James P. Aron, William T. Smithers, Beniah Watson, George N. Murray, Paris T. Carlisle, Jr., William H. Franklin and John W. Hering for Delegates to the Constitutional Conven-tion.

The respondents were the inspectors of said election in the sixteen election districts of the said county.  Ten of them were Democrats ; six were Republicans.

On the third of November, elections were held in fourteen of the said Election Districts, and certificates of the result of such election, signed by the Judges thereof, were delivered to the Board of Canvass at Dover, on the Thursday next thereafter, being the fifth day of November.  An election was held in West Dover Hun-dred, another of said Districts, but no certificate of the results thereof was signed by the Judges, or returned to the Board of Can-vass.  No election was held in the Eastern Election District of Duck Creek Hundred, the remaining District.

At the election so held, there were cast in said County and re-turned, exclusive of West Dover Hundred, about 6910 votes.

The Inspectors of said election, the respondents, with Sheriff Samuel L. Shaw, met at Dover on the fifth day of November, and organized as a Board of Canvass, the said Sheriff presiding, and proceeded to ascertain the results of said election.

The ten Democratic members of the Board of Canvass, calculated the votes of only eight of the fourteen Districts for which returns had been made, and refused to calculate the vote of the remaining six districts; whereby the vote of the County was ascertained to be about 3,948, or about 2,962 less than the total vote returned. By this method they ascertained pluralities for the Democratic Candidates for the respective offices above named, varying from 198 to 390 votes. The said ten Inspectors, together with the Coroner, made, signed and filed certificates of such results, in favor of the Democratic candidates so found to have been elected.

The six Republican Inspectors of the said Board of Canvass, with said Sheriff Shaw, the presiding officer, calculated the returns of all of the said fourteen Districts, for which certificates had been returned, and thereby ascertained the total votes so returned to be about 6,910, and the pluralities for the relators, the Republican candidates for the offices above named, varying from 99 to 467. The said Sheriff and six Inspectors, made, signed and filed certificates of such result, in favor of the Republican candidates so found to have been elected.

A brief review of the *status* of the case may assist in a clear understanding.

On petition of the relators, filed and forwarded to the Chief Justice, a rule was granted, to show cause why a writ of Mandamus should not issue to compel the recanvass of the vote; which rule was made returnable at a special term of the Superior Court for Kent County, to be held at Dover on the nineteenth day of November, 1896.

On that day all of the respondents appeared by counsel. Ten of them elected not to file answer to the rule to show cause, but insisted on their right to the alternative writ; which was thereupon awarded, made returnable on the twenty-fourth day of November,

Del.]   STATE, *ex rel.* ALLEE, *et al.* vs. McCOY, *et al.*   529

Opinion.

1896, and the command of the writ was to be executed on the previous day—the twenty-third.

On the return day, seven of the respondents filed their answer admitting the averments of the petition and alternative writ, and submitting themselves to any order the Court might make in the premises. The said Sheriff also submitted himself to such order. Nine of the respondents made no answer, but by their counsel moved to quash the alternative writ, as insufficient on its face to entitle the relators to the relief prayed for. After full argument a majority of the Court, overruled the motion to quash ; considering the questions raised to be of such magnitude and grave public interest, that a full hearing of the cause upon its merits, as well as upon technical points, was necessary to a wise and just determination ; expressly reserving, however, to the Respondents, the right to urge in such a hearing any proper defense in form, in substance, or on the merits.

Thereupon upon motion, the relators were granted leave to amend their petition, the alternative writ and Return, by making Samuel L. Shaw, the Sheriff of Kent County, a party respondent, and designating said respondents as constituting the Board of Canvass of Kent County ; thereby relieving the case of all question as to proper parties.

The said nine respondents then filed their answer to the alternative writ. This answer on its face distinctly raised the points urged by them as grounds for quashing the alternative writ, and also set forth their defense on the merits.

The relators then moved to quash this answer, as argumentative, uncertain, evasive, ambiguous and insufficient. On this motion the case now rests. In order to give time for careful presentation of the issues thus raised, the Court adjourned until the twenty-seventh day of November, 1896. On which day, as well as on the day following, all the questions raised were fully and ably argued by counsel for both sides.

On this motion to quash the answer, therefore, this case is now

broadly before us, on all questions raised in its progress, upon no one of which has any decision been heretofore rendered by a majority of this Court.

We do not think that the objections raised to the sufficiency of the relators' case, upon the face of the record, have been sustained. The decision, therefore, will be based upon the merits. The issues are broad, pregnant with public interests and too far-reaching in results to have the case determined or stay the arm of the law upon fine technical points or subtle theories.

The Board of Canvass of Kent County, met on Thursday, the fifth day of November, 1896, at Dover for the performance of a public duty enjoined upon it by law; which duty was the ascertainment of the State of the election held in that County on Tuesday, the said third day of November.

It is averred by the relators that the said Board of Canvass did not perform that duty, and that a writ of peremptory mandamus should issue to compel such performance.

The mode of ascertainment of the state of the election, is prescribed by Section 28 of Chapter 18 of the Revised Code, in this language : "The said Board of Canvass shall publicly, in the presence of such electors of the County as shall think proper to be present, ascertain the state of the election throughout the County, by calculating the aggregate amount of all the votes for each office, that shall have been given in all the Hundreds of the County, for every person voted for for such office."

The state of the election was to be ascertained only from the certificates of election made and signed by the inspector and judges of each election district; the production of which for that purpose is fully provided for by the law. The Board had no right to consider the vote other than as set forth in the certificates.

The answer of the respondents distinctly admits that the Board did not canvass the aggregate amount of all the votes given in all the Hundreds of the County, as required by the express terms of the statute ; but only counted and certified the votes of eight of the fourteen districts for which certificates had been returned.

Del.]   STATE, *ex rel.* ALLEE, *et al.* vs. McCoy, *et al.*  ·   531.

Opinion.

Seven of the respondents with Sheriff Shaw tendered them-
selves ready to perform their duty under the order of the Court.,
The remaining nine of the respondents defended their proceedings
as just and right.   They claim in their answer, that the refusal to
count the votes of the six rejected Election Districts, was justified;
for the following reasons :   That, at the elections in said District,
voters' assistants were selected from the Union Republican Party;
which was not one of the two principal political parties named by
the law ; that one of the Judges of the Eastern Election District of
Duck Creek Hundred, who was a member of the Union Republi-
can Party, refused to permit the voters' assistant selected by the
majority of the Judges of said District, to perform his duties as
such officer, declaring that if he were not allowed to select the
voters' assistant, no election should be held ; that there would be
riot and bloodshed ; that one of the clerks, a member of the same
party, refused to deliver the ballots, as he said, under the instruc-
tion of his Judge ; that at the polling place in said District, said
threats were repeated, by sundry other members of the Union Re-
publican Party, black and white; that said clerk had concealed
upon his person during the day a loaded pistol ; that the voters'
assistants were so selected, for the purpose of communicating by
some sign or signal agreed upon to the workers of the Union Re-
puelican Party outside of the election room, how the persons with
whom they had corruptly contracted did vote; that such corrupt
understandings were carried out by said voters' assistants ; whereby
bribery prevailed to such extent, as to defeat the will of the people.
That they were informed by the Attorney General of the State of
Delaware, by letter, that a failure to select voters' assistants from
the Republican Party in any Election District, would be such a
violation of election laws of this State as to constitute "sufficient
grounds for the throwing out of the vote of every Hundred and
Election District where the selection was not thus made ; " that
there were no returns from West Dover Hundred; as the majority
of the election officers refused to make and sign certificates of the
results of the election, because the open and notorious corruption,

bribery and fraud, practiced at the polling place rendered it impossible to ascertain the popular will in that Hundred; that ballot boxes were opened during the progress of the election, contrary to law; that the bribery and corruption, practiced in said Hundreds on election day were so open and notorious, as to evidence that the results of the election were the direct fruits of wholesale fraud and corruption; that the foregoing violations of law, were the outcome of a conspiracy on the part of certain members of the Union Republican Party to suppress the will of the people of the County; that the said nine respondents did not sign certificates of the results of such corrupt and fraudulent elections, for the reason, that it would be giving their sanction and support of such disreputable agencies; and for the further reason, that it did not appear from the reading of the returns from said Election Districts that they were signed by a majority of the officers of election of the respective districts, or by a majority of them; but that they did not examine said certificates, and cannot say whether they were or were not so signed and in due form.

This part of the defense has been detailed fully in substance, because it was much relied upon by the respondents as a justification of their action.

The distinct admission, that they did not examine the certificates of election, of the rejected districts, to see whether they were properly signed and in due form is an admission of failure to perform that part of their duty and is therefore no defense.

All the other above stated grounds, relate to alleged fraud, intimidation, violence, corruption, illegal action of the election officers, and other irregularities, at the respective voting places on the day of the election, with which the Board of Canvass had nothing whatever to do.

This will be apparent from the brief analysis of our election system.

The judges of election, are to sit at the polling places of the respective election districts on election day; receive the votes of duly qualified electors. At the close of the election they count up

the votes so cast and make and sign two certificates of the results of such election; one of which is to be put in the ballot box with the ballots and sealed up, and the other is to be kept by the inspector and delivered to the Board of Canvass.

The Board of Canvass is a convenient legal medium of bringing to one common point, the votes of the scattered election districts; of ascertaining the aggregate result thereof, and of certifying the result so ascertained for the persons so apparently elected.

In order to ascertain the aggregate vote cast in all the districts, the inspectors thereof meet at the County seat on the Thursday next following the election, and from the certificates of election above named, ascertain the state of the election throughout the County. It has been well said by high authority: "Their duties are ministerial, and they are invested with no judicial power that would enable them to pass upon the qualifications of voters, or the regularity of the election. They can only ascertain the result of the election by calculating the aggregate of the votes shown by the certificates of election returned by the inspectors, or from the certificates taken from the boxes under the conditions prescribed by the statute."

The Board of Canvass had power only to ascertain and certify the vote actually cast at the election, and had no right to determine whether they were legal or illegal votes, or whether the election was regularly held or not. In other words, the Board had no right to go behind the certificates of the returns of the judges of election. The attempt to do so was a gross usurpation of the powers vested by the Constitution and laws of the State in the Legislature, where it relates to the election of members in that body, and in the Courts when it relates to the election to other offices. In these tribunals a full and exhaustive examination of all the facts and circumstances attending the election can be had under the sanction of law, with all rights carefully guarded and preserved.

The deliberate disfranchisement of 2962 of the voters of Kent County, by the rejection of these returns, against no one of which voters any charge had been made, and that, too, by the Board of Can-

vass which had no authority, and in defiance of the plain mandate of the statute, was clearly revolutionary, and may not receive the sanction of a court of law. Lawlessness at the election does not justify. lawlessness on the part of the Board of Canvass, which is composed of officers of the law, sworn to obey it, and agents trusted by the people to enforce it.

If lawlessness at elections justifies lawlessness by the Board of Canvass, then so far elections are without law, and are controlled only by fraud, violence, corruption, or, it may be, the passions often engendered in hot political contests. The governing forces in such case would be brute force, political corruption and trickery, and that party would best succeed that could command and effectively use such forces.

The action of the Board was not justified by the plea of necessity. If fraud, violence, corruption and illegality existed at the elections, as alleged, and the will of the people was thereby defeated, the defeated candidates had ample remedy under the law. If candidates for membership in either House of the Legislature, they could go to those bodies for justice; if candidates for some other offices, they could go to the Courts of the State, have the crimes unearthed and fixed upon the guilty person, revise the election returns, seat the persons rightfully elected, and punish the violators of law.

It will not do to assume that the Legislature or the Court would not do their duty and right the wrongs complained of. To assume this, would be to confess the failure of free government and the abandonment of a government of law. It would, in fact, assume a state of anarchy.

This feature of the defense has been dwelt upon thus in detail, because it seems to have impressed itself upon the Board of Canvass, and upon many other well-meaning people as a justification. It is largely the outgrowth of the political methods, corruption and unrest all about us, and is expressed in the maxim; meet force with force; fraud with fraud; bribery with bribery; trickery with trickery. Its prevalence is a menace to our well-being as a

people.   There never was a time when it so behooved good men of all parties to obey the law themselves strictly, and to insist on like obedience on the part of all others.  Such obedience to law will effectually remove this threatening danger.

For the reasons above stated, all that part of the answer of the respondents, which relates to irregularities at the elections must be dismissed from further consideration.

The objection that the inspectors were neither legally elected or appointed is met by the averment that they were duly and legally constituted such inspectors.  The mode of appointment may be omitted as surplusage, being merely a method of selection.

It is objected that the peremptory writ of mandamus, should not be awarded because it would be nugatory.    That its command would be to ascertain the aggregate amount of all the votes given in all the Hundreds of the County.   That, as there appears to be no certificate of election for West Dover Hundred, such ascertainment of all the votes given in all the Hundreds would be impossible.

The answer is, the writ only requires them to do what the law required them to do on the fifth of November; which is to ascertain the results from the certificates, over which they have full control.

The objection that the certificates of election have been delivered to the Sheriff of Kent County, and are no longer subject to the control of the respondents, is met by the answer of the Sheriff in this cause, tendering himself ready to produce the certificates. Moreover, the power is in the Board to compel the Sheriff to produce them should he refuse to do so.

We cannot agree with the contention, that the Board of Canvass which was charged with the performance of a public duty, and which by confession has not performed that duty, may shield itself behind the defense of *functus officio,* and that the writ of mandamus cannot reach it; unless its existence is expressly limited by law or its powers clearly ended.  No such limitations have been satisfactorily shown in this case.

We conclude,therefore,that the duty of the Board of Canvass was a public duty, and that duty has not been fully performed; that the duty itself was a demand, and the omission to perform it a refusal. The ascertainment and certification of the results of the election is a specific duty which can be reached and enforced by no other remedy, the performance of which the relators have a right to insist upon. The writ of mandamus is the only adequate remedy.

The purpose of an alternative writ of mandamus is to compel persons charged with the performance of a public duty, to perform that duty, or to show good and sufficient reasons why the same has not been performed.

In this case the respondents have shown no such sufficien reason. It is therefore right and proper that a peremptory writ of mandamus should be awarded.

Judge CULLEN agrees with me in the conclusion reached, but is not responsible for the language used in this opinion.

GRUBB, J., delivered a dissenting opinion, which was substantially the same as that subsequently read by him as the opinion of the Court of Errors and Appeals and reported *infra*.

Accordingly a peremptory mandamus was issued, commanding the respondents to meet at the Court House in Dover and perform their duty, on Tuesday, December 8, 1896, at 12 o'clock noon, and the writ was made returnable on Saturday, December 12, 1896, at 10.30 a. m., to which time the special session of the Court was adjourned.

Upon the reassembling of the Court, December 12th, *Hayes*, for the relators, presented and read the following affidavit.

" Be it remembered, that on this 12th day of December A. D. 1896, personally appeared before me, John S. Jester, a notary public of the State of Delaware, Beniah Watson, who being by me first duly qualified according to law, deposes and says that he is one of the relators in the above stated cause. That on Saturday, the

Attachment for Contempt.

5th day of December, A. D. 1896, he demanded of William T. Hutson, the Prothonotary of said Court, that he sign and affix the seal of said Court to, and issue the writ of the State of Delaware of peremptory mandamus which this Court had on the 3d day of December, A. D. 1896, awarded to the relators and which said writ had been duly prepared by counsel for said relators and which at the time of said demand was in the possession of said William T. Hutson, it having been duly tendered to him, said William T. Hutson to be signed, sealed and issued, and that said William T. Hutson, at the time of said demand refused to sign, seal or issue said writ as requested and demanded of him, and has ever since refused and still does refuse to sign, seal and issue said writ, and that no writ of peremptory mandamus has been issued as ordered by this Honorable Court in the above stated cause on the 3d day of December, A. D. 1896.

"BENIAH WATSON."

Sworn and subscribed, etc.

Upon this he moved for a rule upon William T. Hutson to show cause why he should not be attached for contempt for not issuing the peremptory writ of mandamus under the order of the Court.

The rule was issued returnable on the same day at 2 o'clock P. M., at which time, *Wolcott,* for the respondent, for return to the rule submitted the following affidavit:

"Be it remembered that on this 12th day of December, A. D. 1896, personally appeared before me, James A. Smith, a Notary Public for the State of Delaware, William T. Hutson, who, being by me duly sworn according to law, deposes and says:

" That he is the Prothonotary of the Superior Court of the State of Delaware in and for Kent County, and that he is the Clerk of the Court of Errors and Appeals of the State of Delaware;

" That at 11.55 o'clock A. M. on Thursday, December 3, 1896, a writ of error at the suit of Thomas McCoy and others, re-

spondents in the above stated case of mandamus, was in due form issued from the Court of Errors and Appeals aforesaid to the Judges of the said Superior Court in the above stated case, which writ was duly served on this deponent as the Prothonotary of the said Superior Court, and that a bond, as provided by the Constitution of the State of Delaware, approved by Honorable David T. Marvel, Associate Judge in and for Kent County, and one of the Judges of said Court of Errors and Appeals, was on the same day received and filed by me as said Clerk of the Court of Errors and Appeals;

" That the said writ of error had also been duly served on the defendants in error;

" That on the 5th day of December, A. D. 1896, Samuel L. Shaw, Sheriff of Kent County, appeared in the office of the Prothonotary of said Superior Court and presented to this deponent a paper purporting to be a writ of the State of Delaware of peremptory mandamus in the above stated case, and requested this deponent to sign the same and to affix the seal of the said Superior Court thereto, so that the said Samuel L. Shaw, Sheriff, could deliver them, which request this deponent declined to comply with;

That afterwards on the same day Beniah Watson, one of the relators, appeared in the office of the Prothonotary of the said Superior Court and inquired of this deponent whether he would sign said paper, to which this deponent replied that he could not;

" That this deponent had previously thereto been advised by counsel that the issuance of said writ of error and the filing of said bond as aforesaid operated as a *supersedeas* to all further proceedings in said Superior Court relating to the above entitled mandamus;

" That the records of said mandamus, by virtue of said writ of error and said bond filed as aforesaid, were transferred and removed to said Court of Errors and Appeals and are therefore not in the legal custody of this deponent as Prothonotary of said Superior Court;

" This deponent further saith that no written or verbal order

Del.]     STATE, *ex rel.* ALLEE, *et al.* vs. McCOY, *et al.*     539·

Argument.

for the issuance of the said peremptory writ of mandamus was·
presented or given to this deponent.

"WILLIAM T. HUTSON."

"Sworn to and subscribed etc."

*Hayes,* for the relators, objected to the sufficiency of the·
return.  He admitted that it has been decided by the Superior
Court of the State of Delaware, it does not matter whether cor-
rectly or incorrectly, that a writ of error lies; that when a writ of
error is taken in an action where judgment has been recovered for·
the recovery of money and a bond then given to prosecute and pay
the condemnation money, that there a writ of error is a *supersedeas;*
but he denied that there is any important case in this State or any
decision that a writ of error is a *supersedeas* to an award of a per-
emptory writ of mandamus.

The order of Court awarding a peremptory writ of mandamus·
is different from a judgment to recover money or the recovery of
land· or anything like that, and at common law it undoubtedly was·
not a *supersedeas.*

LORE, C. J.  Your argument would rather go to whether a
writ of error would lie at all, than as to the effect of a writ of error·
when issued.

*Mr. Hayes.*  The cases I have are cases where a writ of error·
was taken to an award of mandamus and the question has come up·
as to whether it was a *supersedeas* and the Court decided that it was·
not.

*Wolcott,* for the respondent, cited the case of *Tatem and Canby
vs. Gilpin and Gilpin,* 1 Del. Ch. 13, as presenting a strong analogy,
though a case of injunction and not of mandamus.  That case was·
decided by Chancellor Ridgely, and the contention made here with
respect to mandamus was made before him, with respect to an in-
junction.  That case arose under the constitution of 1792, in which·

the language was the same as that of 1832, and Chancellor Ridgely gave an exposition of the meaning and intent of that provision of the constitution, and, as he himself was one of the makers of it, it would seem that he should have been a very fit expounder of it.

The provision having been incorporated in the present consti-·tution, of course went into it subject to the interpretation and construction which had already been placed upon it by judicial authority.

LORE, C. J., stated that the Court were willing to hear further from counsel for the relators, but that as at present advised they felt clear in the conclusion that the writ of error with security given, ·operated as a *supersedeas*.

*Mr. Hayes.* I recognize the fact, if the Court please, that it would be a waste of time to argue it. But if such is the condition of the law in this State, then are we without remedy for this wrong. Delay is fatal to the remedy.

CULLEN, J. As has been well said, this matter having been decided, it is not within our province to decide otherwise, even if we would ; for beyond all question the effect of this writ of error, being a *supersedeas*, has been settled.

Originally at common law, the mere issuing of a writ of error was a *supersedeas* in itself. Afterwards, by reason of trouble which arose by property being disposed of before the case was tried, there was an Act of Parliament passed which rendered it necessary that security should be given. The object of that security was that .no injury might ensue by reason of the delay, during which time the property might be wasted or destroyed.

Certain it is, as has been said, that the express decisions in this ·State apply to the case of recovery of money. For instance, if a writ of error be taken upon a judgment, and there is an execution in the hands of the Sheriff and he gives security, no harm can be ·done even if he wastes the property.

When you come to mandamus, although there may be delay,

Del.]      STATE, *ex rel.* ALLEE, *et al.* vs. McCOY, *et al.*      541

Opinions.

yet what harm or injury can be done, even without security ? But the language of the Constitution recognizes the writ of error as a *supersedeas* in all cases in which said writ may be taken out.

There is no doubt that under our decisions, a writ of error may be taken out, and if that writ of error be taken out in the case of mandamus, what harm can be done, for everything is stopped instantly as soon as that writ of error issues, it being a *supersedeas.* Then when the Court of Errors and Appeals decides the case, if it should decide in favor of the relators, the case goes on immediately just where it was stopped, and no injury and no injustice can be done.

I therefore fully concur in the view expressed by the CHIEF JUSTICE.

LORE, C. J.   Personally—not speaking for the Court—I do regret that this is the *status* of the case; because I think wherever public rights are involved, there should be a prompt and speedy determination of the whole matter at issue.   But we cannot make law ; we are simply here to interpret law.

The right to issue a writ of error is a Constitutional right. It is recognized that this writ of error is rightfully issued.   The Constitutional provision has been complied with, and in our judgment, it is a *supersedeas*, and it must rest there, for a Superior Court has taken the matter out of our hands and they are to deal with this matter now and not this Court.

GRUBB, J. There is just this to add.   While there is no specific remedy, that is to command the particular thing to be done, still in this State there does remain a remedy—possibly two remedies.

It often happens that there is no remedy to have a specific thing done, but the law furnishes other remedies.  One is an action on the case against the parties who deprive another of a right, where he cannot at law have the duty specifically performed ; or, in the case of public officers, where you can reach them, upon

a criminal prosecution by indictment. Our law generally furnishes those remedies.

If there is no remedy, no criminal prosecution even, of course it would be the oversight of the Legislature, and it would be its duty to remedy that omission.

But although, no matter how much we may regret it, we are unable to order a specific thing to be done, yet it cannot be said that in this case there is no remedy of any kind for the particular wrong.

*Mr. Hayes.* I think I said "adequate" remedy.

GRUBB, J. Strictly speaking the law fails to furnish an adequate remedy in very many cases—both civil and criminal.

The Special Term was then adjourned without day.